Flossie J. SMILEY, Appellee,

v.

Leroy WHEELER and Richard E. Buettner, Appellants.

No. 51355.

Supreme Court of Oklahoma.

Oct. 16, 1979.

---

Bay, Hamilton, Lees, Spears & Verity, Oklahoma City, for appellee.

Lucas & Cate, Norman, for appellants.

DOOLIN, Justice:

This is a suit on a note. In 1970, plaintiff sold laundry equipment to defendants for use in their business. Plaintiff took a promissory note and a security interest in the equipment. The security agreement contained an after acquired property clause.

Plaintiff perfected her interest by filing a financing statement.

Defendants made payments on the note until 1973, when they sold the equipment to Straughn. Plaintiff agreed to the sale and assumption of the debt by Straughn. This contract of sale provided Straughn "would assume and pay to (plaintiff) the balance due her on a financing statement filed of record in the County Clerk's office of Oklahoma County, Oklahoma, covering the aforesaid equipment . . ." It further provided "(i)n the event that buyer elects to replace any and all fixtures and equipment, that it will in no way effect (sic) the lien of (plaintiff)."

Straughn continued to make payments to plaintiff but later replaced the equipment with new, financing the purchase through a note and purchase money security interest given a local bank. He made his last payment to plaintiff in March of 1976. Later that year Straughn filed bankruptcy. Defendants attempted to assert a claim against Straughn's assets. It was disallowed by trustee in bankruptcy court. Soon thereafter plaintiff filed the present action against defendants seeking judgment on the note.

Under 12A O.S.1971 § 9–403(2) plaintiff's financing statement was effective for only five years unless a continuation statement was filed prior to its lapse. Plaintiff filed no such continuation statement and the security interest became unperfected. As a defense to the suit, defendants claimed under the Uniform Commercial Code 12A O.S. 1971 § 3–606 they were discharged on the note by reason of plaintiff's failure to keep the security interest in Straughn's equipment alive. Under their theory the failure to file a continuation statement impaired the collateral. Trial court gave judgment to plaintiff for balance due on the note plus interest and attorney's fees. Defendants appeal.

Under defendants' theory, the 1973 contract of sale to Straughn made Straughn the principal debtor and altered defendants' position to that of sureties, citing *American Liberty Life Insurance Co. v. Baird, 176 Okl. 132, 57 P.2d 829 (1936)* and *Scott v. Metropolitan Life Insurance Co., 398 P.2d 822 (Okl.1964)*. Accordingly, plaintiff was under an obligation to protect them, as sureties, against Straughn's default, by not impairing defendants' right of recourse on the collateral. Plaintiffs failure to file the continuation statement resulted in defendants' allegedly losing a prior claim on Straughn's assets in the bankruptcy proceeding. Because plaintiff so impaired the collateral, they argue, § 3–606 [1] relieves them of liability on the note.

The trial court did not accept their theory, finding defendants did not become sureties as a result of the sale of the equipment. It found plaintiff neither impaired the collateral nor waived the *primary* obligation of defendants on the note. It further found a maker of a note could not take advantage of the discharge provisions of § 3–606. Trial court believed this section to be applicable only to subsequent parties with a right of recourse.

Section 9–311 allows a debtor to transfer his rights in collateral. But the interest so transferred is still subject to the creditor's security interest *if it is properly perfected*. [2] This is true of after-acquired property or inventory. A debtor cannot destroy a perfected security interest by transferring the collateral. An after-acquired property clause in a security agreement covers not only equipment of original debtor but also that obtained by transferee

---

1. All statutory citations are to the Uniform Commercial Code 12A O.S.1971.

2. "§ 9–311. Alienability of Debtor's Rights; Judicial Process.—The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default, but the interest so transferred is subject to the creditor's security interest if it is properly perfected, and nothing stated herein shall be construed to be inconsistent with 21 O.S. § 1834."

who is also bound by original terms of the agreement.[3]

As long as it remained perfected, plaintiff had a security interest in Straughn's after-acquired equipment. But when the financing statement lapsed, the security interest became unperfected and thus was lost under § 9–311. No security interest remained in Straughn's assets under the 1970 agreement.

Straughn defaulted on his payments. At his point under § 9–501 a creditor normally has an option to proceed in three ways to collect the debt. She could foreclose, or enforce the security agreement by repossession. Alternatively she could ignore the security interest and seek judgment on the note. Because no security interest remained in Straughn's assets, plaintiff's remaining available remedy was a suit on the note.

Even if defendants are correct in their theory that they became sureties, they are still primarily liable on the note and subject to a suit for its collection[4] unless their defense under § 3–606 is upheld.

> Subsection 1 of this section provides: "The holder discharges any party to the instrument to the extent that without such party's consent the holder
>
> (a) . . .
>
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Only one Oklahoma decision has interpreted this section. In *Beneficial Finance Co. of Norman v. Marshall, 551 P.2d 315 (Okl.App. 1976),* the Court of Appeals held the § 3–606 defense reached conduct by secured party which unjustifiably impaired collateral whether or not the collateral was in the secured party's possession or control.

If a surety pays the debt of the principal debtor, he becomes subrogated to the rights of the creditor and may proceed against the principal debtor and the collateral. If a creditor loses his security interest in collateral, a surety has also lost his right of recovery against the collateral. Failure to file the continuation statement in the case at bar extinguished plaintiff's security interest in Straughn's after-acquired equipment. If defendants paid the note they would no longer have a right of recovery against such equipment.

While not all courts agree, we feel the better logic and purposes of the Uniform Commercial Code are better served by holding such failure to keep the security interest alive is an impairment of collateral as contemplated by § 3–606.[5]

The question next considered is whether the § 3–606 defense is available to defendants, *makers* of the note who have transferred their rights in the collateral to a third party. Section 3–606 would not operate to discharge defendants, as makers, unless they had altered their position to that surety on the note.[6]

Under the cases cited by defendants, *American Liberty Life Insurance Co. v. Baird, supra,* and *Scott v. Metropolitan Life Insurance Company, supra,* an original debtor who pays a debt, assumed by another, becomes subrogated to the creditor's rights because the original debtor *occupies the position of surety* as to the party assum-

**3.** *Georgia-Pacific Corporation v. Lumber Products Co.,* Okl., 590 P.2d 661. Also see *American Heritage Bank and Trust Co. v. O. & E., Inc.,* 576 P.2d 566 (Colo.App.1978).

**4.** See generally L. P. Simpson, Suretyship, pp. 8, 16–30 (1950).

**5.** *Shaffer v. Davidson,* 445 P.2d 13 (Wyo.1968); *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.,* 209 S.E.2d 573 (W.Va.1974); *Langeveld v. L. R. Z. H. Corp.,* 130 N.J.Super.

486, 327 A.2d 683 (1974); *C. F. Rushton v. U. M. & M. Credit Corporation,* 245 Ark. 703, 434 S.W.2d 81 (1968); also see White and Summers, Uniform Commercial Code pp. 425–435 (1972). This is also included in Oklahoma's statutory suretyship law. See 15 O.S.1971 § 377(2).

**6.** See *Federal Deposit Insurance Corporation v. Webb,* 464 F.Supp. 520 (E.D.Tenn.1978).

ing the debt.[7] Under the contract of sale to Straughn, defendants became sureties with a right of recourse against Straughn in the event they paid the note.

■ Section 3–606 is available to "any party to the instrument" who has a right of recourse against the collateral. The phrase "any party to an instrument" may include a maker who has transferred his interest in the collateral thus assuming the position of surety.[8]

■ In the present case defendants, as sureties, after paying the note would be subrogated to plaintiff's rights against the collateral. But plaintiff lost her right to proceed against the collateral by her failure to file the continuation statement. The collateral was impaired.

Defendants, however, would be discharged under § 3–606 only to the extent of the impairment.[9] They must prove the value of the equipment lost[10] and that their claim in bankruptcy court would have allowed if the security interest had been preserved. They must prove plaintiff's impairment eliminated their right to recovery of the equipment in the bankruptcy proceeding. They can only be discharged pro tanto to the extent of the collateral lost.

■ Under the record, defendants are less than convincing that had plaintiff filed the continuation statement they would have had a prior claim in bankruptcy courts. Evidence showed there existed a purchase money security interest in favor of a bank against the equipment. Defendants introduced no bankruptcy records and were unsure of the exact date bankruptcy was filed. Nothing indicated defendant would have had a preferred claim under § 9–312. In addition another company also had a claim against Straughn's assets. There was testimony by a bank official that some of Straughn's property was sold for $19,000.00, none of which went to unsecured creditors. There was no evidence of what the claimed "after-acquired" property was composed of or what it was worth.

Defendants failed to meet their burden of proof that any collateral in which they had a security interest was impaired by plaintiff.

AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS and HARGRAVE, JJ., concur.

OPALA, J., concurs in part, dissents in part.

---

7. See *Oklahoma Publishing Co. v. Video Ind. Theatres, Inc.,* 522 P.2d 1029 (Okl.1974); *D. W. L., Inc. v. Goodner-Van Engineering Company,* 373 P.2d 38 (Okl.1962). Also see *Twombley v. Wulf,* 258 Or. 188, 482 P.2d 166 (1971); *Federal Land Bank of Wichita v. Butz,* 156 Kan. 662, 135 P.2d 883 (1943); L. P. Simpson, Suretyship p. 32 (1950); 72 C.J.S. Principal and Surety § 40 (1951).

8. See *Rushton v. U. M. & M. Credit Corporation,* supra, n.5.

9. *Wohlhuter v. Saint Charles Lumber & Fuel Co.,* 25 Ill.App.3d 812, 323 N.E.2d 134 (1975); *First Security Bank & Trust Co. v. Voelker,* 252 N.W.2d 400 (Iowa 1977).

10. *Christensen v. McAtee,* 256 Or. 333, 473 P.2d 659 (1970).