[No. 7639-0-II.   Division Two.   July 8, 1986.]

PUYALLUP VALLEY BANK, *Respondent,* v. WAYNE G.
MOSBY, ET AL, *Appellants.*

*Frank Birkholz* and *Cartano, Botzer, Larson & Birkholz,*
for appellants.

*Joanne Henry* and *Johnson, Lane & Crawford,* for
respondent.

WORSWICK, C.J.—Wayne Mosby and Richard Maestas
were sole shareholders and officers of M & M Crushing,
Inc., a rock crushing company. The company financed its
operations with loans from Puyallup Valley Bank. As secu-
rity for the loans, in 1978 the Mosbys and the Maestases
executed personal guaranties of all present and future debts
owed to the bank by M & M Crushing.

In 1980, the bank asked for additional security, and M & M Crushing gave the bank a $47,000 mortgage on its vendee's interest in a real estate contract for several lots in Victor Falls Residential Park. M & M Crushing was in default under the real estate contract when it executed the mortgage. The bank nevertheless accepted the mortgage and promptly recorded it.

In 1981, the bank made a series of loans totaling about $111,000 and M & M Crushing gave the bank promissory notes for that amount. On January 11, 1982, as additional security for the loans, M & M Crushing gave the bank a second mortgage on its interest in the Victor Falls contract. The bank did not record this mortgage.[1]

Sixty days later, M & M Crushing filed for reorganization under Chapter 11 of the Bankruptcy Act (11 U.S.C. § 1101 *et seq.*). It confessed to debts of more than $1 million, and listed its interest in the Victor Falls contract as its chief asset. Several months later, M & M Crushing transferred the proceedings to Chapter 7 of the code (11 U.S.C. § 701 *et seq.*).

During pendency of the bankruptcy proceedings, the contract vendors of the Victor Falls property petitioned the bankruptcy court for an order authorizing the bankruptcy trustee to abandon any claim to Victor Falls pursuant to 11 U.S.C. § 362(d)(2). The trustee supported their petition after determining that M & M Crushing had no equity in the property. The court ordered abandonment of M & M Crushing's interest in the contract, and lifted the automatic stay under 11 U.S.C. § 362(d)(2), thus allowing forfeiture. In 1983, a state court entered an order forfeiting the contract.

Meanwhile, M & M Crushing had defaulted on the $111,000 debt. In January 1983, the bank sued the Mosbys on the guaranty. The Mosbys alleged as an affirmative

---

[1]The bank attempted to record the mortgage on January 15, 1983. However, as M & M Crushing had declared bankruptcy by this time, the recording was invalid, as it violated the automatic bankruptcy stay. 11 U.S.C. § 362.

defense that the bank's failure to record the second Victor Falls mortgage operated to discharge them.

The trial court held that the Mosbys had suffered no injury from the bank's delay in recording the mortgage, and were therefore not discharged from their obligations under the guaranty. On this appeal, the Mosbys contend that the court erred in holding that they were not discharged from their guaranty obligation. We affirm.

■ The thrust of the Mosbys' position is that the bank's failure to record damaged their subrogation rights. They correctly state that a surety who discharges the debts of another succeeds to all rights held by the creditor against the debtor. 1 G. Brandt, *Suretyship* § 324 (3d ed. 1905). It follows that if the principal's debt to the creditor is secured by property of the principal, the surety acquires by operation of law a kind of property interest in the collateral securing the primary debt. *National Bank v. Equity Investors,* 86 Wn.2d 545, 546 P.2d 440 (1976). In such cases, the creditor has a duty to take whatever action is necessary to preserve the value of the collateral. *National Bank v. Equity Investors, supra; see Warren v. Washington Trust Bank,* 92 Wn.2d 381, 598 P.2d 701 (1979). If the creditor impairs the value of the collateral, he discharges the guarantor to the extent of the impairment. *Equity Investors,* 86 Wn.2d at 556; *Langeveld v. L.R.Z.H. Corp.,* 74 N.J. 45, 376 A.2d 931 (1977); Restatement of Securities (1941).

Whether the creditor has unjustifiably impaired the collateral is a question of fact. *Lyons v. Citizens Comm'l Bank,* 443 So. 2d 229 (Fla. Dist. Ct. App. 1983). The guarantor seeking discharge has the burden of proving both the existence and the extent of impairment. *Lyons v. Citizens Comm'l Bank, supra; Rempa v. LaPorte Prod. Credit Ass'n,* 444 N.E.2d 308 (Ind. Ct. App. 1983).

Puyallup Valley Bank concedes that it failed to record the mortgage promptly. Generally, failure to perfect a security interest constitutes unjustifiable impairment of collateral. *See North Bank v. Circle Inv. Co.,* 104 Ill. App. 3d 363, 432 N.E.2d 1004, 1007 (1982) (collecting cases). How-

ever, the bank contends that in this case the Mosbys have not suffered actual injury from the impairment, and should therefore not be released from their guaranty.

The Mosbys contend that under the rule of strictissimi juris, the guarantor need not show harm in order to be released from his pledge. The rule of strictissimi juris holds that a surety is completely discharged by any impairment of collateral whether or not he has sustained any loss or prejudice. *See Langeveld,* 376 A.2d at 937 (court expressly declined to apply the rule). The Mosbys assert that this court has adopted the rule, citing *MGIC Fin. Corp. v. H.A. Briggs Co.,* 24 Wn. App. 1, 600 P.2d 573 (1979).

The Mosbys are mistaken. It is settled law in this state that the creditor's impairment of collateral discharges the guarantor only to the extent of impairment. *Warren v. Washington Trust Bank, supra; Equity Investors,* 86 Wn.2d at 556. *Briggs* is not on point; it concerns neither a guaranty nor an unjustifiable impairment of collateral. In any case, the court declared its holding to be in harmony with "the general rule of suretyship: Where a secured creditor surrenders to the debtor, negligently loses or damages the security, it discharges the surety to the extent of the value so lost." 24 Wn. App. at 7. In sum, this jurisdiction has not adopted a rule of strictissimi juris with regard to impairment of collateral.

The Mosbys next argue that they were in fact injured by the bank's failure to record the mortgage. They challenge the court's conclusion of law 6, which reads:

Defendants Wayne G. Mosby [and] June P. Mosby, . . . suffered no damage by reason of the delay of the plaintiff in recording the January 11, 1982, mortgage given it by M & M Crushing Co., Inc. on the Victor Falls Residential Park property until January 15, 1983.

To support their challenge, the Mosbys argue that had the bank immediately recorded the mortgage, it would have acquired priority over the bankruptcy trustee in the subsequent proceedings, and over two judgment lienholders who filed claims after January 11, 1982, but before M & M

Crushing filed for bankruptcy. They argue that because the mortgage was not recorded, the bank lost these priorities and therefore impaired the Mosbys' potential subrogation rights. The Mosbys also contend that by not filing, the bank (and the Mosbys) lost the right to notice of the foreclosure proceedings and the corresponding right to avoid foreclosure by tendering payment.

None of these claims has merit. First, the bank could not have gained priority in the bankruptcy proceeding by recording the mortgage immediately. M & M Crushing executed the mortgage only 60 days before filing for bankruptcy. Under 11 U.S.C. § 547(b), any grant of security interests made by a debtor 90 days or less before he petitions for bankruptcy is a voidable preference. If the security interest would enable the creditor to receive more from the bankrupt's estate than would otherwise be the case, the bankruptcy trustee may void the transaction. Therefore, even had the bank recorded immediately, its interests would not have had priority.

Second, the mortgage was worthless. M & M Crushing had defaulted on the underlying contract long before it executed the mortgage. There is no evidence that the company had any equity in the property when it gave the mortgage. The bankruptcy order authorizing abandonment of M & M Crushing's interest in the Victor Falls contract was premised on a finding that M & M Crushing had no equity in the property.

Third, the claims regarding the intervening judgment liens are meritless. A judgment lien is inferior to the lien of a prior mortgage, even if the mortgage has not been recorded. *Aberdeen Fed. Sav. & Loan Ass'n v. Empire Manufactured Homes, Inc.*, 36 Wn. App. 81, 672 P.2d 409 (1983). The lienholders did not have priority over the bank. In any case, the record shows that the bank has long since fully satisfied the lienholders' claims.

Fourth, by virtue of the 1980 mortgage, the bank already had rights to notice of foreclosure and opportunity to tender payment on the contract. *Chambers v. Cranston,* 16

Wn. App. 543, 558 P.2d 271 (1976). It did not lose those rights by failing to record the second mortgage.

We hold that the trial court correctly determined that the Mosbys suffered no injury as a result of the bank's failure to record the mortgage. The Mosbys simply have not met their burden of showing either the existence or the extent of the alleged impairment.

The bank requests attorneys fees on appeal and has complied with RAP 18.1. The guaranty agreement specifically authorizes attorneys fees in case of litigation. We award the bank $3,500.

Affirmed.

REED and ALEXANDER, JJ., concur.