[No. 21962–6–I.   Division One.   July 31, 1989.]

ROBERT W. HEMENWAY, ET AL, *Respondents,* v. MARGARET
MILLER, ET AL, *Appellants.*

*Arnold B. Robbins, Beth Henney,* and *Breskin & Robbins,* for appellants.

*Robert A. Wolle,* for respondents.

REVELLE, J.*—In 1980, Margaret and Ken Miller (Miller) sold a business to Robert and Patricia Hemenway (Hemenway) for $113,000. Hemenway made a $20,000 down payment and executed a $93,000 promissory note for the balance, to be paid in annual installments of $13,000. Miller took a security interest in the inventory, equipment and goodwill of the business.

Miller filed a U.C.C. financing statement, a copy of which bears the date of December 17, 1980, at the time of the sale to Hemenway. The statement was effective to maintain their security interest for 5 years. Miller did not file a continuation statement and their security interest became unperfected in December 1985.

In 1984, Hemenway sold the business to Sturtz, who agreed to assume and pay the original promissory note. In consenting to this sale Miller first refused to sign a consent form containing language releasing Hemenway from further responsibility. This form also contained a provision for Sturtz' assumption of Hemenway's obligation. Miller subsequently signed a consent form allowing Hemenway to resell the business and stating, "We [Miller] expressly do not waive, surrender or release any monetary obligation due and owing by Robert W. Hemenway and Patricia Hemenway, husband and wife, with regard to our sale" of the

---

*Judge George H. Revelle is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

business. Miller also required Sturtz to furnish a financial statement as a condition of granting consent to the sale.

In October 1985, Sturtz obtained a bank loan of $25,000. The loan was secured by entering into an agreement which gave the bank a security interest in the inventory of the business.

In October 1986, Sturtz defaulted and breached the terms of the purchase and sale agreement by failing to pay the October 1986 annual installment payment of $13,000 to Miller. Sturtz subsequently abandoned the business and filed for bankruptcy. Hemenway paid the October 1986 installment payment of $13,000 to Miller and discovered the existence of the bank's security interest in the inventory.

In November 1986, Hemenway commenced this action for damages and discharge from liability on the note. The basis of Hemenway's claim was that Miller impaired the value of the collateral by failing to file the continuation statement. The trial court entered a partial summary judgment holding Miller liable to Hemenway for impairment of Hemenway's recourse to collateral. Following trial on the issue of damages, the court ruled that Hemenway was entitled to partial discharge of liability on the note in the amount of $32,919.26. No money judgment was entered in favor of Hemenway. The trial judge denied Hemenway's request for attorney fees.

Miller has appealed the judgment and decree and also raises issues pertaining to the order of partial summary judgment. These issues are:

1. Did Hemenway, originally the primary obligor, become a surety as to the debt by operation of law?

2. Did failure to file the continuation statement constitute impairment of collateral?

3. Did a material issue of fact exist, precluding summary judgment?

4. Did Miller's refusal to release Hemenway from the obligation cause Hemenway to remain primarily liable on the note?

5. Did Miller's security interest terminate when Hemenway sold the collateral?

6. Under RCW 62A.9-504(1) must the costs of sale be deducted from the sale value of the collateral in determining the extent of impairment of collateral?

7. Did the trial court err in awarding more in damages than Hemenway had actually paid at the time of trial?

Hemenway raises the following issues on cross appeal:

1. Did the trial court err in denying the request for attorney fees?

2. Did the trial court use an improper measure of damages?

## STANDARD OF REVIEW

The issue of liability was determined on motions for summary judgment. In reviewing an order of summary judgment the appellate court engages in the same inquiry as the trial court. *Escalante v. Sentry Ins. Co.,* 49 Wn. App. 375, 743 P.2d 832 (1987), *review denied,* 109 Wn.2d 1025 (1988); *Hostetler v. Ward,* 41 Wn. App. 343, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986). Summary judgment is proper only when the pleadings, depositions and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). If reasonable minds could reach but one conclusion, an issue of fact may be determined as a matter of law. All facts and reasonable inferences are considered most favorably to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The moving party must meet this burden by setting out its version of the facts and alleging there is no genuine issue as to the facts offered. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 916, 757 P.2d 507 (1988). Once there has been an initial showing of the absence of any genuine issue of material fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues. *Trane Co. v.*

*Brown–Johnston, Inc.*, 48 Wn. App. 511, 513–14, 739 P.2d 737 (1987).

### CREATION OF SURETYSHIP BY OPERATION OF LAW

Miller first contends that the primary obligor cannot become a surety on the debt by operation of law. Miller also contends that Hemenway is not a party entitled to discharge under RCW 62A.3–606, which provides:

> (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
>
> (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or
>
> (b) *unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has right of recourse.*

(Italics ours.) Miller cites numerous cases which limit the right of discharge to sureties.[1] Miller contends that Hemenway could not become a surety merely as a result of the sale and assumption by Sturtz.

█ The trial court based the summary judgment on the rule set forth in *Smiley v. Wheeler*, 602 P.2d 209 (Okla. 1979), that "an original debtor who pays a debt, assumed by another, becomes subrogated to the creditor's rights because the original debtor *occupies the position of surety* as to the party assuming the debt." (Italics ours.) *Smiley*, at 212–13. *Accord, Westinghouse Credit Corp. v. Wolfer*, 10 Cal. App. 3d 63, 66, 88 Cal. Rptr. 654 (1970); *Twombley v. Wulf*, 258 Or. 188, 482 P.2d 166 (1971).

In *Smiley*, the plaintiff sold laundry equipment to the defendant and took a promissory note and security interest in the equipment. The defendant then sold the equipment to a third party, Straughn. The plaintiff/seller agreed to the

---

[1]*See generally* Annot., 93 A.L.R.3d 1283 (1979).

sale and assumption of the debt by Straughn. Straughn subsequently made payments to the plaintiff and financed the purchase of new equipment through a note and purchase money security interest from a local bank. Later, Straughn filed for bankruptcy. The plaintiff subsequently filed an action against the defendant, seeking judgment on the note.

As in the instant case, the plaintiff in *Smiley* had failed to file a continuation statement and the security interest became unperfected.[2] Defendant claimed discharge under U.C.C. § 3–606. The court ruled (1) the original debtor occupied the position of surety as to the party assuming the debt, (2) the phrase "any party to an instrument" in section 3–606 may include a maker who has transferred his interest in the collateral, thus assuming the position of a surety, (3) the original debtor upon payment of the debt to the creditor becomes subrogated to the creditor's rights, (4) the failure to file the continuation statement impaired the collateral under section 3–606. *Smiley*, at 212–13. The court concluded that the defendant was not entitled to discharge only because he had failed to demonstrate the value of the collateral lost.

*Smiley* is persuasive authority in this case. The facts of *Smiley* are virtually on point. There is relatively little Washington case law on the issue presented here; however, the principles in *Smiley* are consistent with several Washington cases.

*Timms v. James*, 28 Wn. App. 76, 621 P.2d 798 (1980), is authority for the creation of suretyship by operation of law. In that case Timms set up a dental practice by purchasing

---

[2]The financing statement is effective for a period of 5 years from the date of filing and lapses at the end of the 5–year period unless a continuation statement is filed prior to the lapse. RCW 62A.9–403(2). A continuation statement may be filed by a secured party within 6 months prior to the expiration of the 5–year period. RCW 62A.9–403(3). Therefore, under this section, Miller's security interest became unperfected upon the lapse of the financing statement and became junior to any perfected interest, including that of Interstate Bank filed in October 1985. *Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.*, 90 Wn.2d 195, 579 P.2d 1341 (1978).

dental equipment from Burkhart. The purchase was financed by a loan from a bank which Burkhart cosigned. Timms then sold the practice to James by entering into an assignment agreement to which the Bank consented. Timms remained liable as the obligor.

James subsequently defaulted on the obligation. Burkhart paid the balance down on the note, sold the dental equipment and demanded the amount of deficiency from Timms. Timms then sued James for that amount. In reaching the issues of the commercial reasonableness of the sale of the collateral, the court held that Timms occupied the position of a surety in relation to James, who became the principal obligor by assuming the underlying debt.

The question of suretyship arising by operation of law has also been addressed in the context of real property. In *Insley v. Webb,* 122 Wash. 98, 209 P. 1093, 41 A.L.R. 274 (1922), the court held that the purchaser of mortgaged property who assumed the debt became primarily liable and the mortgagee/transferor became a surety. *Insley,* at 102–03. *See also Fluke Capital & Mgt. Servs. Co. v. Richmond,* 106 Wn.2d 614, 724 P.2d 356 (1986); *MGIC Fin. Corp. v. H.A. Briggs Co.,* 24 Wn. App. 1, 6, 600 P.2d 573 (1979).

■ Official Comment 1 to RCWA 62A.3–606 states:

> The suretyship defenses here provided are not limited to parties who are "secondarily liable," but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so.

This comment makes it clear that all parties in the position of a surety are entitled to the defense. Therefore, Miller's reliance on case law stating that original makers of the note remain primarily liable is misplaced. We thus distinguish this case from *Seattle–First Nat'l Bank v. Kim,* 38 Wn. App. 101, 684 P.2d 773 (1984), which held that an endorser of a check remains primarily liable on a debt. *Kim* does not reach the issue here—discharge of a party who becomes a surety by sale and assumption of the obligation. *State*

*Bank of Hartland v. Arndt,* 129 Wis. 2d 411, 385 N.W.2d 219 (Ct. App. 1986), also cited by Miller, is similarly distinguishable because the party seeking discharge was the original debtor, who had not become a surety. *Cf. United States v. Unum, Inc.,* 658 F.2d 300 (5th Cir. 1981); *Livingston v. Shelton,* 85 Wn.2d 615, 537 P.2d 774 (1975), *cert. denied,* 424 U.S. 958, 47 L. Ed. 2d 365, 96 S. Ct. 1437 (1976).

Here, Hemenway did not remain primarily liable because under the principle in *Smiley,* sale of the collateral and assumption by Sturtz transformed Hemenway's position to that of a surety.

### IMPAIRMENT OF COLLATERAL

■ Hemenway was entitled to discharge if failure to file a continuation statement constitutes unjustified impairment of the collateral under section 3-606. Miller contends that it does not. We disagree. The principle that failure to file the continuation statement constitutes impairment of collateral is consistent with the general rule that failure to perfect a security interest unjustifiably impairs the collateral. *Puyallup Vly. Bank v. Mosby,* 44 Wn. App. 285, 287, 723 P.2d 2 (1986); *North Bank v. Circle Inv. Co.,* 104 Ill. App. 3d 363, 432 N.E.2d 1004 (1982); *Langeveld v. L.R.Z.H. Corp.,* 74 N.J. 45, 376 A.2d 931, 95 A.L.R.3d 949 (1977). *See also Warren v. Washington Trust Bank,* 92 Wn.2d 381, 390, 598 P.2d 701 (1979). We also note that the resulting burden on the creditor is de minimis. The creditor, as the party who filed the original filing statement, is in the best position to know when the financing statement expires. Filing the continuation statement is not an onerous requirement.

### SUMMARY JUDGMENT

Miller contends that the question of whether Miller knew of the assumption of the obligation by Sturtz is a material

question of fact that was improperly resolved here by summary judgment.[3]

The defenses provided in RCW 62A.3–606 are available only to *known* sureties. *Seattle–First Nat'l Bank v. Kim, supra* at 104; *MGIC Fin. Corp. v. H.A. Briggs Co., supra* at 6; *Walin v. Young,* 181 Or. 185, 180 P.2d 535 (1947); Official Comment 3, RCWA 62A.3–606; Restatement of Security § 114 (1941). A person knows or had knowledge of a fact when he or she has actual knowledge of it. RCW 62A.1–201. The sole issue raised by Miller is whether Miller knew of Sturtz' assumption of the debt by December 1985, when the financing statement expired.

The evidence considered by the trial court included the first consent to assignment form presented by Hemenway to Miller, which included language consenting to the assumption of the debt by Sturtz. Hemenway's affidavit states (1) Miller required a financial statement from Sturtz as a condition of executing the consent to assignment, (2) Hemenway sent their prorated portion of the 1984 payment to Sturtz to send with Sturtz' portion to the collection bank and (3) Hemenway told Miller in October 1984 about the prorated payment and that Sturtz had assumed the loan and was responsible.

Miller's affidavit does not directly controvert these assertions. Miller acknowledges that in October 1985 they knew the name on the collection account had been changed from Hemenway to Sturtz and that Sturtz made the 1985 payment and part of the 1984 payment. Miller's affidavit includes numerous assertions about what they "assumed"

---

[3]The issue of liability was determined on motions for summary judgment. The trial court entered findings of fact and conclusions of law in the order of partial summary judgment. Findings of fact are superfluous in summary judgment proceedings and will not be considered by the appellate court. *Chelan Cy. Deputy Sheriffs' Ass'n v. Chelan Cy.,* 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1987); *Donald v. Vancouver,* 43 Wn. App. 880, 883, 719 P.2d 966 (1986).

about the consent agreement. Miller also makes only a conclusory assertion that they did not know the terms of the Hemenway–Sturtz sale and learned of the assumption only after the litigation began. Such nonspecific denials are not sufficient in responding to a motion for summary judgment. *Trane Co. v. Brown–Johnston, Inc., supra* at 519. On this record we find that reasonable minds could only conclude that Miller knew of the assumption at the time the financing statement expired. Therefore, the trial court did not err in concluding there was no genuine issue of material fact.

## RESERVATION OF RIGHTS

■ Miller contends that in refusing to release claims against Hemenway, they reserved their rights within the meaning of RCW 62A.3–606(2). Thus, Miller contends, Hemenway was not entitled to discharge under that section. We disagree. RCW 62A.3–606(2) provides:

By express reservation of rights against a party with a right of recourse the holder preserves

(a) all his rights against such party as of the time when the instrument was originally due; and

(b) the right of the party to pay the instrument as of that time; and

(c) all rights of such party to recourse against others.

Assuming, arguendo, that the language in the consent form expressly not waiving Hemenway's obligation attempted to accomplish such a reservation of rights, we do not agree that this bars Hemenway from discharge.[4] Official Comment 4 states that the section retains the right of the holder to release one party or postpone his time of payment while expressly reserving rights against others. This case does not involve release but, rather, impairment of collateral. The Comment offers no indication that section 3–606(2) has any relation at all to impairment of collateral

---

[4]RCW 62A.3–606(2) allows for reservation of rights against a *party with a right of recourse*. We note, as did the Commissioner of the Supreme Court, in denying discretionary review, that the argument that Miller reserved rights against Hemenway under this section is inconsistent with their contention that Hemenway remained primarily liable on the note.

under section 3–606(1)(b). We hold that RCW 62A.3–606(2) does not authorize a creditor to reserve its rights when it impairs collateral. *Farmers & Merchants Bank v. Poe,* 19 Ark. App. 151, 718 S.W.2d 457, 460 (1986) (citing J. White & R. Summers, *Uniform Commercial Code* § 13–15 n.138 (1980)). *Cf. American Bank of Commerce v. Covolo,* 88 N.M. 405, 540 P.2d 1294 (1975) (no discharge where guarantor expressly released rights in the collateral).

Miller cites *Davis v. Gutheil,* 87 Wash. 596, 152 P. 14 (1915) and *Hallowell v. Turner,* 95 Idaho 392, 509 P.2d 1313 (1973). These cases are inapposite. They deal with release of parties rather than impairment of collateral.

### SECURITY INTEREST TERMINATION

■ Miller contends that pursuant to RCW 62A.9–306(2), his security interest terminated when Hemenway sold the business to Sturtz. Miller concedes that this issue was not raised at the trial court. Indeed, we note that Miller presented precisely the contrary argument on the motion for summary judgment, contending that the perfected security interest expired with the financing statement on December 17, 1985. We reject Miller's argument that the alleged termination of the security interest can be raised for the first time on appeal on the ground that Hemenway has failed "to establish facts upon which relief can be granted." RAP 2.5(a)(2). Miller cites no authority for this contention. *See State ex rel. LeDuc v. Napier,* 49 Wn. App. 783, 787, 746 P.2d 832 (1987). Furthermore, in the particular posture of this case we perceive Miller's claim to be in the nature of an affirmative defense.

Having deprived the trial court of an opportunity to rule on the alleged termination, Miller cannot raise it on appeal. RAP 2.5(a); *State ex rel. Graham v. San Juan Cy.,* 102 Wn.2d 311, 317, 686 P.2d 1073 (1984).

### OFFSET

■ Miller contends that the value of the collateral should have been offset by the "projected costs" of sale of the collateral. Miller cites as authority RCW 62A.9–504,

which provides that a *secured party* after *default* may sell the collateral and apply the proceeds first to the costs of sale and then to satisfaction of the debt. That section provides a remedy to the creditor who must expend time and money to recover on a debt after the debtor has defaulted. *E.g., Rotta v. Early Indus. Corp.,* 47 Wn. App. 21, 24, 733 P.2d 576, *review denied,* 109 Wn.2d 1012 (1987). Miller cites no authority for applying this section to a situation such as this when no such default or sale has occurred. We hold that RCW 62A.9-504 has no application to the facts of this case. We see no reason why the creditor in this case should receive the benefits of this section when it lost recourse to the collateral by its own failure to preserve its security interest.

### LIMIT OF DISCHARGE

Miller contends that discharge should have been limited to the amount that Hemenway had actually paid to date on the debt. Miller cites *Goodwin v. American Sur. Co.,* 190 Wash. 457, 479, 68 P.2d 619 (1937). We disagree.

*Goodwin* stated the general rule "that the doctrine of subrogation requires that the person seeking its benefit must have paid the debt due his creditor before he can be substituted to the creditor's rights." This rule has no application to the facts here. Subrogation is pertinent when the surety seeks to take advantage of the creditor's rights. When, as here, the creditor has impaired recourse to the collateral, and the primary obligor is insolvent, the surety has no remedy by subrogation. Instead, discharge on the debt may be the only remedy. *Smiley,* at 212. *See also Warren v. Washington Trust Bank, supra* at 390. Miller's contention would lead to an absurd result. Hemenway would have to pay each installment before being entitled to discharge. Because Hemenway no longer has recourse to the collateral, Hemenway would, in effect, have to pay the debt from which he seeks discharge.

Miller's argument also ignores the express language of section 3-606, which provides for discharge "to the extent"

the holder impairs the collateral. *See Puyallup Vly. Bank v. Mosby, supra* at 288. The section does not allow discharge merely to the extent the surety has made payments owed by the primary obligor.

We now turn to the issues raised on cross appeal.

## ATTORNEY FEES

Hemenway contends that the trial court erred in denying an award of attorney fees. Hemenway cites provisions in the promissory note, the contract of sale and the security agreement allowing attorney fees and contends that this suit is a "suit on a contract" as provided in RCW 4.84.330, which makes contractual attorney fees mutual.

The contract of sale includes a provision that in the event of default, "the complaining party may bring suit for such damages as may be appropriate, together with a reasonable sum as attorney fees." The provision on attorney fees in the promissory note states: "In case suit is instituted to collect this Note or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in this suit." The trial court reasoned that the duty here (apparently the duty not to impair collateral) arose from the statute, not the contract. Therefore, the court concluded, the suit was not a suit "on the contract" as provided in RCW 4.84.330. The court considered *Hackney v. Sunset Beach Invs.,* 31 Wn. App. 596, 644 P.2d 138 (1982), which held that a suit for rescission by the buyer in a real estate contract was an action on the contract.

Miller correctly points out that as Hemenway resumed payment on the note, there was no default and therefore this is not a suit to collect on the note. It does not necessarily follow, however, that this is not a suit "on the contract."

In *Western Stud Welding, Inc. v. Omark Indus., Inc.,* 43 Wn. App. 293, 299–300, 716 P.2d 959 (1986), this court held that a contractual attorney fee provision entitled the prevailing party to attorney fees because the contract was "central to the dispute." *Omark,* at 299. As in *Omark,*

this lawsuit "arose out of" the contract and promissory note. *See also Miller v. Badgley,* 51 Wn. App. 285, 297, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988) (U.C.C. provision on implied term of the contract that was central to the dispute); *Rotta v. Early Indus. Corp., supra* (attorney fees allowed where creditor failed to notify debtor of sale of collateral as required under U.C.C. § 62A.9-507); *Hackney v. Sunset Beach Invs., supra* at 603 (action for rescission an "action on the contract" for the purpose of awarding attorney fees); *Herzog Aluminum, Inc. v. General Am. Window Corp.,* 39 Wn. App. 188, 692 P.2d 867 (1984) ("action on a contract" encompasses any action in which it is alleged that a person is liable on a contract, including a lawsuit successfully defended by proving the *absence* of an enforceable contract). *Cf. Redding v. Rowe,* 36 Wn. App. 822, 826, 678 P.2d 337 (1984).

The court's reasoning focuses on Hemenway's defense to the debt—discharge—rather than on the underlying debt itself, which gave rise to the litigation. If, instead of suing for discharge, Hemenway let default proceedings occur, Miller almost certainly would have sued on the note.[5] Hemenway would have raised the defense of discharge and the arguments would have proceeded as raised here. Under the trial court's reasoning here, Hemenway would be entitled to attorney fees for successfully defending the suit to collect on the note. We see no reason to predicate the award of attorney fees on which party initiates the lawsuit. As the prevailing party,[6] Hemenway was entitled to attorney fees.

---

[5]We note that the record reveals Miller promptly instituted default proceedings against Hemenway in October 1986 when Sturtz failed to make the yearly installment payment. Apparently Hemenway made the payment within the 15-day grace period provided in the contract and Miller withdrew the action for default.

[6]*Miller does not dispute that Hemenway was the prevailing party.* As judgment was rendered in Hemenway's favor and Hemenway was awarded statutory

The attorney fee provisions of the contract apply here in favor of Hemenway.

### MEASURE OF DAMAGES

Hemenway contends that the proper measure of damages in this case should include the value of the whole business to plaintiffs, not just the severed value of inventory, fixtures and equipment. Hemenway's alternative argument is that the trial court should have measured damages at a different time and the court should have considered evidence that was more competent than that which was received.

We note that Hemenway's trial counsel chose not to be present at the deposition of Miller's expert witness on valuation of inventory. The witness did not appear at trial; instead, his deposition was made part of the record. The record also indicates that the parties did not submit briefs on the issue of damages. To the extent that Hemenway's argument regarding damages is an after–the–fact challenge to the expert's testimony, we find the issue is waived. We also note that Hemenway cites no authority for the alternative argument, and that substantial portions of the damage contentions on appeal were not raised before the trial court. In any event, we find that the value of impairment of the collateral as determined by the trial court is within the range of relevant testimony and is supported by substantial evidence. *Cultum v. Heritage House Realtors, Inc.*, 103 Wn.2d 623, 694 P.2d 630 (1985).

We affirm the trial court on all issues except the disallowance of attorney fees. The cause is remanded to the trial court for determination of reasonable attorney fees at trial.

WEBSTER and PEKELIS, JJ., concur.

Review granted at 113 Wn.2d 1016 (1989).

---

costs, Hemenway is the prevailing party. *Miller v. Badgley, supra* at 297; *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762, 773–74, 677 P.2d 773, *review denied,* 101 Wn.2d 1021 (1984).