[No. 4309.   Decided November 18, 1902.]

DAVID SUTTER, *Respondent,* v. MOORE INVESTMENT COMPANY, *Appellant.*

NOVATION — SUBSTITUTION OF DEBTORS — EVIDENCE — CONVERSATIONS BETWEEN ORIGINAL AND SUBSTITUTED DEBTOR.

Conversations between a debtor and one who assumed his obligation under a new contract are admissible, in an action by the creditor against the substituted debtor, for the purpose of showing the understanding arrived at by the parties to the novation.

SAME — SUFFICIENCY OF EVIDENCE.

In an action upon a contract by novation wherein a new debtor was substituted for the old, a nonsuit was properly refused where it appeared that plaintiff refused to supply a restaurant keeper with meats for his business owing to non-payment of bills due; that defendant agreed to pay the debtor's obligation to plaintiff and the latter agreed to accept the defendant instead of the original debtor; that as part of the agreement the receipts of the restaurant business were turned over to defendant; and that further goods were furnished on the credit of defendant under the new agreement and bills rendered to defendant, who made part payment on both the old and the new accounts.

SAME — CONTRACT MADE BY CORPORATE EMPLOYEE — LIABILITY OF CORPORATION.

Evidence that the manager of the defendant company, at the time the alleged novation was entered into, called plaintiff up by telephone and said: "This is the Moore Investment Company, Mr. Moore talking," was sufficient to establish that the contract was entered into by the manager in his representative capacity rather than as an individual.

Appeal from Superior Court, King County.—Hon. GEORGE MEADE EMORY, Judge.     Affirmed.

*Smith & Cole,* for appellant.

*Richard Osborn,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The respondent sued appellant on two causes of action, alleging in both that appellant owned, controlled, and managed the Lincoln building in Seattle, and operated and conducted the same as an apartment house; that for the accommodation of the tenants of the Lincoln, a restaurant, known as the "Lincoln Cafe," was conducted by one Tremaine; that on March 4, 1901, Tremaine owed the respondent for meats $411.23, and was refused further credit unless such indebtedness was paid; that thereupon appellant, respondent, and Tremaine entered into a nova-

tion, whereby appellant, for the purpose of keeping the said restaurant running, and in consideration of the arrangement made between it and Tremaine for the payment to it of the receipts of the restaurant, agreed to pay said bill, and respondent accepted appellant and discharged said Tremaine, and that thereafter, on March 8, 1901, appellant paid respondent $211.23 of said bill, agreeing to pay the balance of $200 within one week; and that the same was never paid. For a second cause of action it is alleged that appellant directed respondent to furnish whatever meat should be required to supply said restaurant, and agreed that upon presentation of weekly statements of the amount so furnished it would pay the same; that, relying upon such agreement, the respondent furnished the restaurant with meats to the value of $562.54, and rendered weekly statements, which appellant promised to pay, but it paid no part thereof except $50, leaving a balance due of $512.54. The total amount sued for is $712.54. The appellant interposed a general denial to the first and second causes of action, excepting it admitted that the Lincoln was an apartment house, and that it, paid the respondent $211.23 on March 8, 1901, and also the sum of $50, and denied that any sum was owing from it to the respondent. After respondent's case was presented, appellant made a motion for a nonsuit, which was denied. A verdict was rendered by the jury for the amount prayed for by the respondent, and a new trial on the ground of insufficiency of the evidence to justify the verdict and for errors of law occurring at the trial was denied.

The contention that the court erred in overruling the objections to the testimony of Tremaine relative to a conversation between himself and Moore is untenable. Tremaine was one of the parties to the novation and the

testimony was simply a link in showing the understanding arrived at.

It is claimed by the appellant that a novation was not established by the testimony. The doctrine of novation is so well understood that it hardly seems necessary to cite authorities to define it. Novation means substitution. It may be either the substitution of a new obligation for an old one between the same parties with intent to displace the old obligation with the new, or the substitution of a new debtor for the old one with intent to discharge the old debtor, or the substitution of a new creditor with intent to transfer the rights of the old creditor to the new. The second class is the ordinary case of novation, and is the case involved in the cause on trial. A novation is a new contractual relation. It is based upon a new contract by all the parties interested. It must have the necessary parties to the contract, a valid prior obligation to be displaced, a proper consideration, and a mutual agreement. If A. owes B. a sum of money, and C. agrees to pay the debt of A. to B., and B. agrees to accept C. instead of A. as payor of the debt, and to discharge A. from his original obligation, that is a novation. There was sufficient stated in the complaint to create a novation, and we think the testimony was sufficient to be submitted to the discretion of the jury. It appears that Tremaine turned over the receipts of the business to the appellant, that the appellant agreed to pay Tremaine's obligation to the respondent, and that the respondent agreed to accept the appellant instead of Tremaine. As to the goods subsequently furnished to Tremaine, the respondent testifies positively that he would not have furnished them except for the agreement, and that he rendered his bills to appellant company.

The appellant contends and testifies through its manager that the secretary of the appellant company became simply the cashier of the appellant, and was in no way responsible for any particular debt. But there was a plain conflict of testimony on that subject, which the jury determined in favor of respondent's contention. It is again contended by the appellant that, if there was any promise to pay or substitute, it was Moore individually, who was the manager of the company, that entered into the contract, and not the appellant company. But upon this there is also a conflict of testimony. A part of this contract was made through the medium of the telephone, and Tremaine and respondent testified that when Tremaine and the appellant had come to an understanding that the appellant was to be substituted for Tremaine, Moore, the manager of the appellant company, called up the respondent by telephone, and commenced the conversation in this wise: "This is the Moore Investment Company, Mr. Moore talking." We think this was sufficient to convey the idea to the respondent that he was dealing with the Moore Investment Company, and not with the particular individual who was at the telephone.

No error of law having been committed by the court, and the case having been submitted to the jury under proper instructions, the judgment will be affirmed.

REAVIS, C. J., and FULLERTON, ANDERS and MOUNT, JJ., concur.