[No. 30941.   Department Two.   July 19, 1949.]

WILLIAM MACPHERSON, *Appellant*, v. MARCO I. FRANCO *et al.*, *Respondents*.[1]

[1]Reported in 208 P. (2d) 641.

*Acheson & Smith,* for appellant.

*Maslan & Maslan* and *Dwight N. Stevens,* for respondents.

SCHWELLENBACH, J.—Victor Salvino employed the Mac-Pherson Realty Company to sell his restaurant, the Marina Grill. Orson P. Bates, a salesman for MacPherson, placed an ad in the paper, which was read by the defendant, Marco I. Franco. Franco and Bates met at the restaurant and talked the deal over with Salvino. A couple of days later, October 25, 1946, Franco and his two sons went back and consummated the transaction. An agreement was drawn up by·Al Franco, an attorney, and signed by the parties. The agreement was to pay fifteen thousand dollars cash. Franco paid one thousand dollars earnest money. While they were there, Bates came in.

The next day Salvino, Bates, and Al Franco met in the latter's office. Franco asked for a bulk sales affidavit as to creditors. Salvino said that there were a few creditors, but that he would pay them, so the notation, "No Creditors" was written on the affidavit and filed. But it was agreed that the balance due would not be paid during the five-day period.

Bates testified that the day previous, at the restaurant, when Salvino was handed the one thousand dollar check, he asked him about his commission, and Salvino said, "I'll see that you get your commission." This was denied by the Francos. Al Franco testified that the following day in his office, Bates asked Salvino about his commission and the latter said to him, Franco, "Well, you're going to hold out a certain amount of money for some of these creditors, and you might as well hold out this one thousand five hundred dollars for this commission."

During the five-day period a large number of creditors appeared. The total amount of claims paid was $7,588.89. On October 6th, Salvino approached Franco and said that he was going to the hospital the following day and needed his money. He said that he had a balance coming of seven

thousand five hundred dollars and to give him six thousand dollars and pay the rest (one thousand five hundred dollars) to MacPherson. A hurried examination was made by Franco, who verified these figures and issued a check to Salvino in the sum of six thousand dollars. On October 8th, Franco sent his check in the amount of one thousand five hundred dollars to MacPherson. Later, Franco realized that he had overlooked the down payment of one thousand dollars and that the balance due Salvino was six thousand five hundred dollars instead of seven thousand five hundred dollars, so he stopped payment on the MacPherson check.

MacPherson commenced this action for the amount of the check issued to him. Franco denied liability and, as an affirmative defense, alleged the facts heretofore related. Of the amount due Salvino on the transaction, he had a balance remaining of $411.11, which he paid into the registry of the court, to be disposed of as the court should determine. In the meantime, Salvino had committed suicide, and his administrator appeared in the action as an additional defendant and claimed the balance for the benefit of Salvino's estate.

The trial court dismissed MacPherson's action against the Francos, and awarded the $411.11 to Salvino's estate. This appeal follows.

Appellant states:

"This is a simple case of Novation. Franco was indebted to Salvino for the balance of the purchase price of the "Marina Grill". Salvino was indebted to MacPherson Realty Company for the commission earned as a result of the sale of that grill. The parties between themselves agreed that the amount due from Salvino to MacPherson should be paid by Franco and deducted from what Franco owed to Salvino. That is a novation and is a valid and binding contract based upon a complete consideration all the way around. Franco by reason of his promise had the right to deduct $1500.00 from what he owed Salvino. Salvino, by reason of the agreement, wiped out his indebtedness to MacPherson; and Mac-Pherson accepted the check of Franco in settlement of the obligation of Salvino. There was consideration all the way around."

■ A novation has been defined as follows:

"A novation, then, as understood in modern law, is generally defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by the substitution of a new creditor." 39 Am. Jur. 255, Novation, § 2.

In the early case of *Sutter v. Moore Inv. Co.*, 30 Wash. 333, 70 Pac. 746, this court said:

"The doctrine of novation is so well understood that it hardly seems necessary to cite authorities to define it. Novation means substitution. It may be either the substitution of a new obligation for an old one between the same parties with intent to displace the old obligation with the new, or the substitution of a new debtor for the old one with intent to discharge the old debtor, or the substitution of a new creditor with intent to transfer the rights of the old creditor to the new. The second class is the ordinary case of novation, and is the case involved in the cause on trial. A novation is a new contractual relation. It is based upon a new contract by all the parties interested. It must have the necessary parties to the contract, a valid prior obligation to be displaced, a proper consideration, and a mutual agreement. If A. owes B. a sum of money, and C. agrees to pay the debt of A. to B., and B. agrees to accept C. instead of A, as payor of the debt, and to discharge A. from his original obligation, that is a novation."

■ Here there was no agreement between Salvino, MacPherson and Franco whereby Franco agreed to pay to MacPherson the debt of Salvino, and MacPherson agreed to accept Franco instead of Salvino as the payer of the debt, thus discharging Salvino from his original obligation. No new contract was entered into between all the parties interested.

Appellant contends that in any event he is entitled to the $411.11 remaining in the hands of respondent Franco and by him paid into the registry of the court. The only theory under which we could award this residue to appellant would be that of novation, and we have already resolved that contention against him. Appellant performed certain services

for Salvino. Whether or not he is entitled to compensation for such services and in what amount, has never been determined. Salvino having died without any payment for these services having been made by him, it is now incumbent on appellant to look to Salvino's estate for his money.

The judgment is affirmed.

JEFFERS, C. J., ROBINSON, SIMPSON, and GRADY, JJ., concur.

