The FAY CORPORATION, a Washington corporation, Plaintiff,

v.

BAT HOLDINGS I, INC., also known as Marshall Field & Co., a Delaware corporation; and Frederick & Nelson Seattle, Inc., a Delaware corporation, Defendants.

No. C86–542D.

United States District Court, W.D. Washington, at Seattle.

Oct. 23, 1986.

Hall Baetz, Joseph D. Weinstein, Davis, Wright & Jones, Seattle, Wash., for plaintiff.

Bruce Corker, Edward W. Kuhrau, Michael F. Mogan, Perkins Coie, Seattle, Wash., Samuel J. Silverman, Martin Flumenbaum, Paul, Weiss, Rifkind, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER

DIMMICK, District Judge.

Plaintiff, the Fay Corporation ("Fay"), and defendant, BAT Holdings I, Inc. ("BAT"), cross move for summary judgment. At issue is a 99-year lease containing a provision for payment in gold coin (a "gold clause") originally executed by Fay as lessor in 1929. The Court concludes that a 1982 transfer of the lease to BAT created a new contract (a novation). Thus the gold clause, otherwise unenforceable

under a 1933 statute, is revived and enforceable under a 1977 statute.

The parties agree that the issues before the Court can be determined as questions of law. BAT first moved for summary judgment dismissal on the pleadings. Fay cross moved for summary judgment in three alternative forms: (1) enforcement of the gold clause as partial judgment, with resulting rent to be determined; or (2) cancellation of the lease as full judgment due to impossibility of performance; or (3) equitable relief (reformation or rescission) as partial judgment.

After consideration of memoranda and hearing of oral argument, the Court grants Fay's motion for partial summary judgment on the first alternative. It is therefore unnecessary to address the remaining issues.

## BACKGROUND

Prior to the Depression era, "gold clauses" in contracts were a popular method of adjusting for inflation. These clauses mandated payment in gold coin, its equivalent, or, with some other wording, tied the dollar amount demanded with the price of gold.[1]

In 1933, a joint resolution of Congress invalidated all gold clauses and provided that "dollar for dollar" payments in United States currency would discharge the obligation. 48 Stat. 112, 113 (1933) (formerly codified at 31 U.S.C.A § 463).[2] The following year, the Gold Reserve Act banned private ownership of gold. (Repealed, formerly codified in part at 31 U.S.C.A. §§ 442, 443 (1976).) The holding of gold remained prohibited until 1973, when Congress repealed the 1934 ban on private ownership of gold (87 Stat. 352 (1973), as amended by 88 Stat. 445 (1974), but did not address the 1933 prohibition of gold clauses. This omission was remedied in 1982, when the statute at issue was adopted (31 U.S.C.A. 5118(d)(2) (1983), (hereinafter "section 5118"). The language provided that obligations covered by gold clauses prior to 1977 are, as before, dischargeable dollar for dollar with United States currency. But "an obligation issued after October 27, 1977" is not so limited.[3]

## FACTS

The Fay Corporation owns the land and building in downtown Seattle now occupied by a major department store. In 1929, Fay executed a 99–year lease of the property and premises to Frederick & Nelson. This lease contained a then-valid gold clause providing that the $8,333 monthly rental be paid "in lawful gold coin of the United States of America of the present standard of weight and fineness."

Between the execution of the lease and the 1982 transfer at issue, the leasehold changed hands twice in transfers which are not before the Court. In 1982, five years after section 5118 created an October 27, 1977 validity date for gold clauses, the lessee in possession, Marshall Field & Company, transferred its rights in the lease by "assignment" to the defendant, BAT Holdings I. BAT accepted the "assignment"

1. Kenneth W. Dom, *From the Gold Clause to the Gold Commission: A Half Century of American Monetary Law,* 50 Chicago L.Rev. 504 (1983).

2. The significant parts of 48 Stat. 112, 113 (1933) provide:

   Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold ... is declared to be against public policy.... Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar-for-dollar, in any coin or currency which at the time of payment is legal tender for public and private debts.

Upheld in *Holyoke Water Power Co. v. American Writing Paper Co.,* 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678 (1937); *Guaranty Trust Co. of New York v. Henwood,* 98 F.2d 160 (8th Cir.1938), aff'd, 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266 (1939).

3. Section 5118(d)(2) of 31 U.S.C. (Pub.L. No. 97–258, 96 Stat. 985 (1982)), provides:

   An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar-for-dollar) in United States coin or currency that is legal tender at the time of payment. This paragraph does not apply to an obligation issued after October 27, 1977.

and explicitly assumed Marshall Field's obligations under the lease. This was accomplished using the transfer language required in Article XIII of the original lease.[4] Upon a proper assumption by the transferee, the 1929 lease further provided that the assignor would be released from any and all obligations under the Lease after the date of "such sale, conveyance or assignment...."[5] BAT does not dispute the 1982 transfer or the release of Marshall Field's obligations under the lease.

## ISSUE

Thus, the issue before this Court is whether plaintiff Fay's discharge of Marshall Field's obligations through Article XIII of the lease constitutes a valid "prior mutual assent" to novation, creating a new contractual obligation in the 1982 transfer to defendant BAT and resulting in an enforceable gold clause of an "obligation issued after" the October 27, 1977 effective date of section 5118.

The parties agree that the legislative history of section 5118 reveals that the phrase "obligations issued after October 27, 1977"

is intended to mean an obligation (including contractual obligations) "entered into" after that date. The Eleventh Circuit supports that interpretation in *Rudolph v. Steinhardt,* 721 F.2d 1324 (11th Cir.1983)[6]:

> The legislative history to the amendment reveals that the word "issued" was intended to mean "entered into".... [Senator's Helm's] construction of the word "issue" corresponds with its normal meaning in law....

*Id.* at 1330.

■ If the transfer to BAT was a mere assignment, as BAT contends, BAT holds as assignee under the original 1929 contract, and the enforcement of the gold clause is barred by section 5118. If, however, as Fay argues, the transfer was a novation, the contract is a new obligation "entered into" after October 27, 1977 and the gold clause is again effective.[7]

## ASSIGNMENT

■ An assignment differs from a novation in two ways: (1) an assignment creates no contract between lessor and assignee, and (2) an assignment does not discharge

---

**4.** Article XIII of the lease entitled "Assignment of Lease" provides, in part:

Lessee may sell and convey its interest in said leased premises, and in any building thereon, at any time hereafter; provided ... such assignee or assignees shall expressly accept and assume all the terms and covenants in this lease contained, to be kept, observed and performed by the Lessee, and shall agree to become bound by all the provisions thereof and to become bound to personally comply therewith....

**5.** Article XIII of lease also provides that "in the event that any assignment shall be made at the times, under the conditions, and in the manner herein before set forth, the party so selling, assigning or conveying the leasehold estate hereby created shall thereby be forever released and discharged from any and all obligations arising or accruing under the covenants and agreements in this lease contained subsequent to the date of such sale, conveyance or assignment...."

**6.** There was no transfer at issue in *Rudolph* when the Court determined that lessees or assigns became obligated at that date to pay rent as it became due, and the 1977 statute did not affect a 1970 lease. Also defining "issued," the

court ruled in *Gold Bondholders Protective Council v. Atchison, Topeka & Santa Fe Railway,* 649 P.2d 947 (Alaska 1982), ruled that a 1980 purchase and delivery of 1895 bonds to new investors did not constitute a new "issue" of the bonds for section 5118 purposes.

It is also clear that the 1977 amendment did not, as was argued by some, impliedly repeal the 1934 gold clause statute, except, under section 5118, as to obligations issued after October 27, 1977. *Southern Capital Corp. v. Southern Pacific Co.,* 568 F.2d 590 (8th Cir.1978), *cert. denied,* 436 U.S. 927, 98 S.Ct. 2821, 56 L.Ed.2d 770 (1978).

**7.** It is appropriate here to discard defendant's alternative argument against reviving the gold clause. In addition to attacking the existence of a novation, defendant reasons that *regardless* of whether the transfer is an assignment or a novation, the gold clause should not be revived because the amendment, according to its author, Senator Helms, was to "stand neutral" as to past obligations. 123 Cong.Rec. 635 (1977) (remarks of Senator Helms).

BAT's argument ignores the legal effect of a novation. A novation is a new obligation unto itself as of the date the substitution of parties is complete.

the assignor's original obligation to the lessor.

◼ At common law, the original tenant's obligation to the landlord arises by virtue of both privity of contract (express terms) and privity of estate (duties that run with the land). When the original lessee assigns his rights to a third party (the assignee), the original lessee, as assignor, is no longer liable to the lessor/owner under privity of estate, but remains liable under privity of contract unless relieved by the lessor. *See, e.g., Shadeland Development Corp. v. Meek*, 489 N.E.2d 1192 (Ind. App.1986); Restatement (Second) of Contracts § 318 (1979); Restatement (Second) of Property (Landlord and Tenant) § 16.1 (1976).

A duty cannot be "assigned" in the sense rights are assigned. Properly, rights are assigned and duties are delegated. *See, e.g.,* J. Calamari and J. Perillo *Contracts* § 254, at 596 n. 6 (1970).

◼ The Restatement (Second) of Contracts § 328(1), recognizes the common usage of the term "assignment" by asserting that, unless language or circumstances are to the contrary, an assignment of "the contract" or of "all rights under the contracts" is to be interpreted as an assignment of assignor's rights and a delegation of his unperformed duties under the contract. However, as noted in comment (a) to this section and recognized by all courts, an assignor's intention that the assignee be substituted for him or her is not completely effective unless the obligor of the assigned rights (the lessor) assents, thus creating a novation.

◼ Section 323(1) of the Restatement provides that "a term of a contract manifesting an obligor's assent to the future assignment of a right or an obligee's assent to future delegation of a duty is effective...." The effect of an obligor's assent

may be, as comment (a) explains, "an offer of a new contract by novation, or the acceptance of an offer of novation...." [8]

## NOVATION

A novation is commonly defined as the replacement of an unexpired contract by another contract reached through renegotiation, or the substitution of a new party concurrent with the release of an original party from liability. *Williams Petroleum Co. v. Midland Cooperatives, Inc.*, 679 F.2d 815 (10th Cir.1982).

◼ Strictly speaking, a "novation" is a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty. Restatement (Second) of Contracts § 280.[9] As a novation is a new contractual relationship, it must conform to basic contractual requirements. The four essential elements of a novation are set forth by the Washington Supreme Court in *MacPherson v. Franco*, 34 Wash.2d 179, 182, 208 P.2d 641 (1949): (1) A mutual agreement (2) among all parties concerned (3) for the discharge of a valid existing obligation (4) by the substitution of a new valid obligation or substitution of one party for another.

This definition is consistent with other Washington cases and cases from other states. *See, e.g., Boise Cascade Corp. v. Distinctive Homes, Inc.*, 67 Wash.2d 289, 407 P.2d 452 (1965); *Pacific States Securities Corp. v. Austin*, 146 Wash. 492, 263 P. 732, 734 (1928); *Sutter v. Moore Investment Co.*, 30 Wash. 333, 70 P. 746 (1902); *Shiflet v. Marley*, 58 Ariz. 231, 118 P.2d 1107 (1941); *Sans Souci v. Division of Florida Land Sales & Condomiums*, 421 So.2d 623 (Fla.App.1982), *appeal after remand*, 448 So.2d 1116 (Fla.App.1984).

## ANALYSIS

The parties before the Court do not dispute the validity of the old or new obli-

---

8. BAT argues against "characterizing" the transfer as a novation. But it is well-settled that whether or not an instrument is an assignment is determined by its effect and not its form. *See, e.g., Bedgisoff v. Morgan*, 23 Wash.2d 737, 162 P.2d 238 (1945), opinion adhered to by rehearing, 24 Wash.2d 971, 167 P.2d 422 (1946).

9. Restatement (Second) of Contracts § 279 calls a contract between parties which replaces an original contract between the same parties a "substituted contract."

gation (except for the applicability of the gold clause), or the fact that the transferor's liability was extinguished by the transfer. The dispute is whether the necessary "mutual agreement among all parties" exists to complete a novation.

BAT cites *MacPherson v. Franco, supra* at 182, and *Sutter v. Moore Investment Co., supra,* 30 Wash. at 336, 70 P.2d 746, in support of its argument that FAY's alleged prior consent in the lease clause does not satisfy the "mutual agreement among ALL parties" requirement.

In *MacPherson* and *Sutter,* novation fails and succeeds, respectively. *MacPherson* concerned a real estate sale where the seller told the buyer to pay the agent's commission, but buyer stopped payment on the check. The Supreme Court affirmed the lack of novation, observing that the agent never agreed to the substitution.

In contrast, the *Sutter* court did find a novation. Defendant landlord agreed to pay the meat bills his restaurateur tenant owed to the supplier plaintiff; tenant turned over receipts to the defendant; and plaintiff agreed to accept defendant instead of the tenant.

The Ninth Circuit has relied on these same principles in applying Washington law. *Western Machinery Co. v. Northwestern Improvement Co.,* 254 F.2d 453 (9th Cir.1957). Where plaintiff took a promissory note from a third party but did not release the defendant, the court determined that there was "no novation whereby [third party] assumed the debt of [defendant] and [plaintiff] accepted the transfer of liability with the consent of all three parties." *Id.* at 461.

Restatement (Second) of Contracts § 280, discussing novations and assent, cites section 23, which addresses general mutual assent for contracts: "It is essential to a bargain that each party manifest assent with reference to the manifestation of the other." The usual situation is that one party, by making an offer, assents in advance; the other, learning of the offer, assents by accepting it. The test, according to the Restatement, is whether the accepting party is justified in believing that the offer is made to him or her.

In the instant case, BAT apparently argues that the third requirement of mutual agreement has not been met: that is, Fay's failure to execute a new release of the lessee Marshall Field at the time BAT assumed the lessee's obligations results in a failure to reach agreement by all the parties. BAT, however, admits that the prior lessee, Marshall Field, agreed to transfer its rights to defendant BAT in 1982, and that BAT agreed to accept the rights and also agreed to assume Marshall Field's obligations to plaintiff Fay under the lease. Moreover, BAT does not dispute the fact that Fay released Marshall Field from its obligations and accepted BAT as lessee. This Court views the release contained in Article XIII of the original lease as valid assent by Fay to the assumption by BAT and release of Marshall Field. With this assent, Fay has joined in a mutual agreement with Marshall Field and BAT.[10]

█ BAT's second argument against a valid mutual agreement is that contemporaneous consent is required: the prior consent contained in Article XIII of the lease is not effective, and so mutual agreement to a novation does not exist. Timing of consent for a novation has not been specifically addressed by the Washington courts, however *Spaulding v. Aetna Casualty & Surety Co.,* 164 Wash. 665, 4 P.2d 526 (1931) described later, is clearly applicable. Other jurisdictions are split on whether assent must be contemporaneous or not, with the majority ruling that prior and/or subsequent assent is valid.

BAT looks to Wyoming law for support of its contention that the assent must be contemporaneous with the substitution of the parties. In *Scott v. Wyoming Oils,* 52 Wyo. 433, 75 P.2d 764 (1938), the court

---

**10.** Novation of leases is addressed in 66 C.J.S. *Novation* § 18(f)(2) (1950): "In case of an assignment of a lease a novation is effective where, in pursuance of an agreement, the Landlord accepts the new Tenant and releases the old.... [T]here must have been a mutual agreement by the three parties involved...."

reversed, holding that no novation occurred. The court cited a Missouri case for support that parties must all agree to a novation at the time it occurs. *Emerson-Brantingham Implement Co. v. Sawyer,* 210 Mo.App. 535, 242 S.W. 1007, 1008 (1922).[11]

A Washington state case addressing release of a surety, however, supports Fay's contention that prior consent is valid. *Spaulding v. Aetna Casualty & Surety Co., supra.* There, the court recognized that a clause in a lease had the effect of releasing a principal upon assignment, thus releasing the plaintiff's surety. While not defined by the court as a novation, novation is what in effect occurred.[12]

A. Corbin, *Contracts* § 1297 (1963) directly supports this court's interpretation of *Spaulding.* Section 1297, at 216 provides:

It is possible for a creditor [lessee] to give his assent to the substitution of a new debtor [lessor] in advance, thus empowering the latter to consummate a novation by causing a third party to undertake performance in his place.

Lessors are not alone in their ability to create a novation through prior consent. *Baum v. National Finance Co.,* 108 Colo. 107, 114 P.2d 560 (1941). (Assent to a novation may be expressed by a contractor at the time the contract is made, empowering the obligor to substitute another for himself.) *Corbin* § 866, at 456–57 n. 39.[13]

■ This Court concludes that the 1982 transfer by Marshall Fields to BAT was a valid novation, creating a new contractual obligation as of August 28, 1982. Gold clauses are enforceable after October 27, 1977, pursuant to section 5118; moreover, enforcement of the gold clause will not do violence to the purpose of section 5118, because it is not a "past obligation" that the amendment is affecting but a new one entered into after the amendment was in

11. In attempting to discover any Washington law which might color defendant's argument, this Court found only one case of questionable relevance, *Schrock v. Gillingham,* 36 Wash.2d 419, 219 P.2d 92 (1950). There, ruling on an evidentiary matter, the Supreme Court agreed with the trial court that statements made by the third party subsequent to the time he delivered a check to plaintiff for the defendant debtor and promised payment of the balance were not material on the question of whether there was a novation at the time the check was accepted.

12. Two recent decisions in different venues directly support this Court's conclusion that a prior consent does act as valid assent to a novation. In *Shadeland Development Corp. v. Meek,* 489 N.E.2d 1192 (Ind.App.1986), a lease contained a clause allowing assignment without consent of the lessor, and a release of the lessee upon acceptance and assumption of the lease obligations by the assignee.

The court agreed with plaintiff that the lease clause was "a free right of assignment coupled with a novation" and held that the right to assign was not limited.

The second case is remarkably similar to the case before this Court, in that the outcome of a lease transfer is affected by the timing of a state statute banning rent escalation clauses. *Sans Souci v. Division of Florida Land, Inc.,* 421 So.2d 623 (Fla.App.1982), *appeal after remand,* 448 So.2d 1116 (Fla.App.1984). If a novation had occurred in the transfer in question, the statute could be invoked. Remanding to determine the correct date to use, the court observed that an assignment under certain circumstances can be a novation, and found unpersuasive the argument for contemporaneous consent in *Scott v. Wyoming Oils,* 52 Wyo. 433, 75 P.2d 764 (1938). Upon a subsequent appeal, the Florida court concluded that all parties had not agreed and the state agency below had erred in implying consent from (among other factors not here pertinent) the fact the original lease "allowed assignment". While the court did not set out the lease language, it is clear that if an express release clause had been contained in the lease, the *Sans Souci* court would have been satisfied that a novation had occurred.

13. Other authorities are in accord with the validity of prior consent to a novation: "it is not necessary for this purpose that all of the parties to the novation manifest their assent simultaneously nor that they all be in the same place...." Restatement (Second) of Contracts § 280, at 378.

The reporter's notes to Restatement (Second) of Property (*Landlord and Tenant*) § 16.1(5) provide that mutual agreement is necessary for a novation and that "[t]he release of a transferor can be controlled by the original parties to the lease in that they can specify by lease provision the terms by which a release can be effected." A.J. Casner, *American Law of Property,* Landlord and Tenant § 3.61, at 310 (1954) concurs: "[A] novation will release the lessee from liability altogether and a lease may provide that the lessee shall be released upon assignment ..."

force. Therefore, the gold clause contained in the August 28, 1982 contract is enforceable. The amount of rent owed under the gold clause and the date from which it should accumulate will be determined at trial.

THEREFORE, plaintiff's motion for partial summary judgment is GRANTED.

The Clerk of the Court is instructed to send a copy of this Memorandum Decision and Order to all counsel of record.