**LA SALLE NATIONAL BANK, not individually, but as Trustee Under Trust No. 39649, Plaintiff–Appellant,**

v.

**David BACHMANN, Defendant–Appellee.**

**No. 88 C 10092.**

United States District Court, N.D. Illinois, E.D.

Dec. 22, 1989.

Morehead & Flynn, Chicago, Ill., for plaintiff.

Mitchell Jones, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff–Appellant LaSalle National Bank ("LaSalle") brought suit in the United States Bankruptcy Court against Defendant–Appellee David Bachmann ("Bach-

mann"), seeking a determination of the non-dischargeability of a debt allegedly owed LaSalle by Bachmann. On cross-motions for summary judgment, the bankruptcy court held that LaSalle was estopped from asserting the non-dischargeability of the debt and ruled in favor of Bachmann. LaSalle now appeals from that order. For the reasons set forth below, the judgment of the bankruptcy court is reversed.

## FACTS

This controversy grows out of a lease executed by the parties at the end of October, 1982, under which LaSalle, as lessor, agreed to lease a certain improved property to Bachmann[1] for the period November 1, 1982 through May 31, 1988. LaSalle alleges and Bachmann admits that in approximately December, 1985, and periodically thereafter, certain rents and other charges owed to LaSalle under the lease were not paid. On November 19, 1985, the Bockman Company, of which David Bachmann was the president and sole shareholder, filed for Chapter 11 bankruptcy protection (Case No. 85 B 15804). LaSalle, through Podolsky & Associates, Ltd. ("Podolsky"), the managing agents of the leased property, was notified of these proceedings and was listed as a creditor. The Bockman Company assumed the lease at issue on January 31, 1986, pursuant to 11 U.S.C. § 365 and an authorizing order of the bankruptcy judge; to qualify for assumption under § 365, however, the Bockman Company arranged with Podolsky to cure all existing defaults by increasing the monthly rent from $3,833.33 to $4,128.25. With the approval of the bankruptcy court, the Bockman Company assigned this lease on February 28, 1986, to the New Bockman Company, a corporation in which Bachmann has no ownership interest. The lease was subsequently assigned to the Chicago–Midwest Credit Service Corporation on February 3, 1987. LaSalle has accepted rent from both entities.

Independent of the Bockman Company's bankruptcy proceedings, Bachmann filed individually for bankruptcy relief under Chapter 11 on April 18, 1986. The case was converted to a Chapter 7 liquidation proceeding nearly three months later. Bachmann listed neither LaSalle nor Podolsky as a creditor, nor did he notify either party that he had filed for bankruptcy protection. Bachmann's debts were ordered discharged on January 15, 1987; it was not until February 2, 1987, when Podolsky contacted Bachmann, that LaSalle learned of the bankruptcy proceedings and of the order discharging Bachmann's debts. On August 3, 1987, LaSalle filed a complaint in the bankruptcy court asking that court to determine that Bachmann's debt under the lease was not discharged due to his failure to list LaSalle as a creditor and to notify it of the bankruptcy proceedings, thereby prejudicing its rights and jeopardizing its interests.[2]

Both parties filed for summary judgment, and on July 25, 1988, the bankruptcy court ruled in favor of Bachmann, holding that the doctrine of equitable estoppel prevented LaSalle from asserting its claim. *LaSalle National Bank v. Bachmann*, No. 87 A 696 (N.D.Ill. July 25, 1988). LaSalle had full knowledge of the assignment from the Bockman Company to the New Bockman Company, the court reasoned, and in effect ratified both this assignment and the original assignment of the lease to the Bockman Company by failing to object to the second assignment. Because LaSalle chose not to object to the assignments at the time—and indeed accepted the fruits of these assignments in the form of rent payments—the bankruptcy court held that LaSalle was estopped from denying the assignments. The court concluded that "it would be inequitable to allow the Landlord to now pursue this Debtor [Bachmann] un-

---

**1.** The lease names David A. Bachmann, d/b/a The Bockman Company, as the tenant, and Bachmann admits in his answer to the complaint that he executed the lease individually as lessor.

**2.** The complaint contained a second count—that Bachmann had knowingly reported an inflated evaluation of his personal residence on which LaSalle relied in entering the lease agreement. This count was dismissed upon written stipulation of the parties on October 25, 1988.

der a lease in which he reasonably concluded he had no interest or obligation."

## DISCUSSION

■ We agree with the bankruptcy court that LaSalle cannot now be heard to contest the validity of either the assignment from Bachmann to the Bockman Company or the subsequent assignment from the Bockman Company to the New Bockman Company. The lease contains a provision limiting the ability of the lessee (Bachmann) to assign the lease by requiring the landlord's prior written consent (Industrial Space Lease at 6). No evidence has been proffered indicating that such consent was granted or even requested. A requirement of prior consent to assignment can be waived by the landlord, however, if he subsequently treats the assignment as valid:

> Where a tenant has attempted assignment of a lease in contravention to its terms, the assignment is not void but merely voidable by the landlord. If the landlord does not elect to treat the leasehold as void, the requirements of the lease regarding assignment are deemed waived.

*Woods v. North Pier Terminal Co.,* 131 Ill.App.3d 21, 23–24, 86 Ill.Dec. 354, 356, 475 N.E.2d 568, 570 (1985) (citations omitted). While it is unclear exactly when LaSalle first became aware of the assignment from Bachmann to the Bockman Company, it is undisputed that Podolsky received timely notice that the Bockman Company had filed for bankruptcy and that the lease at issue was listed as one of its debts. LaSalle did not at that time exercise its right under the lease to void the assignment. And LaSalle implicitly consented to the assignment when it subsequently negotiated with the Bockman Company, through Bachmann, an increase in the monthly rent to cure existing defaults so that the Bockman Company would be eligible to assume the lease under 11 U.S.C. § 365. Because

LaSalle in this case chose not to treat the assignment as illegitimate, it cannot now deny its validity. It follows from the finding that the Bockman Company had a valid interest in the lease that the assignment to the New Bockman Company—made under the auspices of the bankruptcy court and with notice to LaSalle—is also valid.

■ While LaSalle is estopped from contesting these assignments, however, we cannot agree that this holding precludes it from pursuing Bachmann for the debt he allegedly owes. That Bachmann validly assigned the lease to the Bockman Company does not mean that he "reasonably concluded he had no interest or obligation" with respect to the lease.[3] It is a fundamental principle of landlord/tenant law that a tenant's assignment of his lease to another party does not divest that tenant of his obligations under the lease:

> [T]he original tenant's obligation to the landlord arises by virtue of both privity of contract (express terms) and privity of estate (duties that run with the land). When the original lessee assigns his rights to a third party (the assignee), the original lessee, as assignor, is no longer liable to the lessor/owner under privity of estate, but remains liable under privity of contract unless relieved by the lessor.

*Fay Corp. v. Bat Holdings I, Inc.,* 646 F.Supp. 946, 950 (W.D.Wash.1986); *see also Amelong v. Peacock,* 278 Ill.App. 142, 144–45 (1934); R. Cunningham, W. Stoebuck & D. Whitman, *The Law of Property* 383 (1984). Moreover, the lease itself explicitly incorporates this concept of continuing liability, providing that

> [n]o permitted assignment or subletting shall relieve Tenant of Tenant's covenants and agreements hereunder and Tenant shall continue to be liable as a principal and not as a guarantor or surety, to the same extent as though no assignment or subletting had been made.

---

**3.** LaSalle did not raise this point before the bankruptcy court; the thrust of its argument there challenged the legitimacy of the assignments. The bankruptcy court, finding LaSalle's argument untenable, therefore concluded that the bank was estopped from pursuing its claim entirely. On appeal, however, LaSalle grants that the assignments may have been valid and attacks the conclusion that Bachmann reasonably thought that he had no further obligations under the lease.

(Industrial Space Lease at 6–7.) Bachmann's argument that this common law principle is superseded in bankruptcy cases by 11 U.S.C. § 365(k)[4] is not relevant to the circumstances of this dispute; the assignment from Bachmann to the New Bockman Company did not take place in the context of any bankruptcy proceeding, and therefore § 365(k) is inapplicable.

 In setting out this common law principle of assignor liability, courts are careful to distinguish between an assignment and a novation, whereby the original tenant is released from its obligations under the lease. Although not specifically considering this distinction, the bankruptcy court did find that LaSalle had "consented to the *assignment* of the Lease to the original Bockman Company" (emphasis added); even Bachmann adverts to his "assignment" to the Bockman Company (appellee's brief at 10). This characterization is supported by the record. Because a novation, which extinguishes the contract between the *assignor* and the landlord, amounts to a new contractual relationship between the *assignee* and the landlord, it cannot be created by the unilateral intention of the assignor; an effective novation requires the landlord's assent. *Fay Corp.*, 646 F.Supp. at 950; *Amelong*, 278 Ill.App. at 145. There is simply no evidence that LaSalle consented to a novation in this case; indeed, even LaSalle's consent to the *assignment* is only inferred from its failure to object and its acceptance of rent from the assignee. Consent to a novation cannot so easily be inferred. *See Amelong*, 278 Ill. App. at 150; *The Law of Property* at 383 (landlord's release of original tenant "generally is not implied from the landlord's consenting to the assignment and certainly not from his simply accepting the assignee's performance").

Despite the many assignments and bankruptcy proceedings that becloud this lease, then, Bachmann, by virtue of established principles of assignment, was never released from his obligations under it. Nor

can he be considered to have reasonably come to such a conclusion. The law that an assignor remains liable after assignment is well settled and easily ascertained; moreover, the explicit provision in the contract that lays out this principle should have extinguished any doubt that might have remained. We therefore find that LaSalle should not be prevented from pursuing Bachmann under this lease. Because the bankruptcy court held that LaSalle was estopped from asserting its claim of non-dischargeability, it did not reach the merits of LaSalle's claim. We therefore remand the case to consider the question of the dischargeability of Bachmann's debt under the lease.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is reversed. The case is remanded to consider LaSalle's claim of non-dischargeability.

---

**4.** That section provides:

Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.