[No. 34163.   Department Two.   January 9, 1958.]

R. C. EMRICH, *Appellant,* v. GARDNER & HITCHINGS, INC.,
*et al., Respondents.*[1]

[1]Reported in 320 P. (2d) 288.

*Hall, Cole & Lawrence* and *Stanley F. Atwood*, for appellant.

*Medley & Haugland* and *Dale E. Sherrow*, for respondents.

ROSELLINI, J.—This suit was brought to set aside a compromise agreement entered into on March 24, 1954, between the plaintiff and Gardner & Hitchings, Inc., who will be referred to hereafter as the defendant. Under the terms of the agreement, the defendant, a civil engineering firm, was to receive $16,500 from the proceeds of the sale of lots in a real-estate subdivision, which the plaintiff was developing on Mercer Island, Washington. This sum included a $10,000 charge for services rendered to the plaintiff and $6,500 for services rendered to the water and sewer districts, for which the plaintiff assumed secondary liability. It was also a part of the agreement that White & Bollard, Inc., as sales agent, should receive the purchase money from the sales and make remittance to the defendant of $100 from the sale of each lot; and upon the receipt of such payments the defendant was to release its engineer's lien pro rata. This agreement was carried out for eight months, during which time a total of $6,400 was paid to the defendant by White & Bollard, Inc., and $6,500 was paid by the water and the sewer districts. The plaintiff then instructed its agent to make no further payments to the defendant, and thereafter the agent retained $100 from the sale of each lot until $3,600 was accumulated.

Approximately nineteen months after the date of the agreement, this suit was instituted, the plaintiff alleging that he had been forced to sign the agreement because the

defendant had filed a lien grossly in excess of the amount then due for services rendered, and that the plaintiff was at the time so heavily committed financially that he was unable to contest the validity of the lien. It was further alleged that the plaintiff had been compelled to agree to pay to the East Mercer sewer district and to water district No. 91, certain sums claimed by the defendant for services rendered to these districts, which sums were later paid by the water and sewer districts. The complaint alleged that White & Bollard, Inc., as the sales agent of plaintiff, had remitted to the defendant the sum of $6,300, which sum was at least $950 in excess of the reasonable and agreed value of the engineering services of the defendant.

The plaintiff prayed that White & Bollard, Inc., be enjoined from making further payments to the defendant, that the agreement of March 24, 1954, be declared null and void, and that judgment be given against the defendant for $950, being the amount paid to it under the terms of the agreement in excess of the reasonable and agreed value of its services, together with his costs and disbursements.

A copy of the contract under which the defendant was employed by the plaintiffs, dated April 24, 1953, and a copy of the agreement of March 24, 1954, were attached to the complaint and made a part thereof by reference.

The defendant admitted that it had filed its lien against the properties in the amount of $11,990.14, but alleged that the amount was reasonable and in accordance with the agreement between the parties and denied that the plaintiff was coerced in signing the agreement of March 24, 1954. Ratification and waiver were also pleaded as defenses. The defendant asked judgment against White & Bollard, Inc., for the balance due under this contract.

White & Bollard, Inc., tendered the balance due under the compromise agreement into the registry of the court and asked that it be discharged from all liability to either of the parties.

The action was tried to the court, which found that the amount claimed in the defendant's lien was reasonable, and that the lien had been filed in good faith. It also found that

the plaintiff had guaranteed payment to the water and sewer districts. The court concluded that the compromise agreement was not coerced and further, that the plaintiff, having failed to challenge the validity of the agreement until it was too late for the defendant to foreclose its lien and having accepted the benefits of the agreement for nineteen months, had waived any right he might have had to seek its rescission.

It was adjudged that the $3,600 deposited with the clerk of the court by White & Bollard, Inc., should be paid to the defendant, and that the defendant should recover its costs and disbursements from the plaintiff.

White & Bollard has not appealed.

The theory upon which the plaintiff seeks to recover in this action is that of "business compulsion."

The plaintiff urges that the court should have found in his favor because, in his view of the case, the defendant had no right to file a lien for its engineering services, having waived its lien rights when it entered into the contract of April 24, 1953. He argues that the unjustified filing of the lien, with knowledge that he was financially in no position to contest its validity, constituted duress under the doctrine of "business compulsion." He points out that this court has applied the doctrine in a number of cases, citing *Olympia Brewing Co. v. State*, 102 Wash. 494, 173 Pac. 430; *Sunset Copper Co. v. Black,* 115 Wash. 132, 196 Pac. 640; *Duke v. Force*, 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354; *Schafer v. Giese*, 135 Wash. 464, 238 Pac. 3; *Ramp Buildings Corp. v. Northwest Bldg. Co.*, 164 Wash. 603, 4 P. (2d) 507, 79 A. L. R. 651; *Starks v. Field*, 198 Wash. 593, 89 P. (2d) 513. The theory of those cases is that, where a person is called upon either to suffer a serious business loss or to make a payment to which the recipient is not lawfully entitled, if he makes the payment, he may recover it as having been made involuntarily.

It appears that, at the time the contract of April 24, 1953, was entered into, the plaintiff owned approximately eighteen acres of land on Mercer Island, Washington, and was the contract vendee of an additional seventy acres. The de-

fendant was retained to make, and was paid for, a topographic map of the entire area. The plaintiff proposed to develop this tract as a residential area, and the defendant submitted its proposal to perform the engineering services incident to this development, which was accepted. Under the terms of this contract, the defendant was to be paid $500 for a master plan, upon its approval by the planning commission. For engineering and surveying incidental to the grading of roads, it was to be paid eight per cent of the grading and culvert costs; and for the drafting, computing and surveying required for recording plats, it was to be paid $33.50 per enclosure. The provision upon which the plaintiff relies as a waiver of lien rights is as follows:

"Seventy percent (70%) of the money due per lot shall be paid on receipt of any first 'down payment' received on any portion of the present property within the 'tentative plat' and the balance when monuments are set. However, surveying is not to be completely financed by us and platting of the last 150 lots or tracts is only to be started after the 70% payment on prior platted lots or tracts has been made."

Work under this contract continued until approximately December 22, 1953. In the meantime, certain changes were made in the original plan, necessitating some extra work on the part of the defendant. When the work was terminated in December, the defendant had completed a major portion of the office work necessary for the platting but was unable to go forward with staking because the land had not been cleared.

Early in 1954, the plaintiff informed the defendant that his financial condition was such that he did not know whether he could continue with the development of the project. At that time, no lots had been sold and no payments had been made on the contract, although statements had been rendered for the master plan and certain extra work. So far as the record discloses, the plaintiff did not question the propriety of these billings. In February, 1954, he informed the defendant that he was considering the sale of all his interest in the property in its then stage of development and asked for a statement of the amount he

owed the defendant, should he terminate the contract at that time. The defendant submitted a statement for $19,-099.59.

In the preceding weeks, the defendant had submitted several proposed modifications of the original contract to the plaintiff. One of these contained the statement that the plaintiff was indebted to the defendant in the total sum of $5,350 at the time of the agreement. None of these proposed modifications was accepted by the plaintiff.

On March 4, 1954, the defendant, through its attorney, wrote to the plaintiff, demanding that arrangements be made to pay the sum of $19,099.59. On March 12th, the defendant filed its lien on the entire tract for $11,990.14.

The plaintiff was, at this time, in serious financial difficulties. He had entered into an agreement with White & Bollard, Inc., to act as agent in selling the lots, and when that company learned that the lien had been filed, it advised the plaintiff that if the matter was not straightened out, it would abandon its contract with him.

Negotiations followed, with the three parties being represented by their attorneys. The compromise agreement which is the subject of this suit was reached as a result of these negotiations. As we have stated above, this agreement was performed until the time for foreclosing the defendant's lien had expired.

The plaintiff concedes that if the defendant had a right to file its lien, and if that lien was not excessive in amount, he was not subjected to any unlawful duress when he entered into the compromise agreement. The trial court found that the amount claimed was reasonable and within the contemplation of the contract and that the services had been rendered. The plaintiff offered no evidence to the contrary except the proposed modification of the original contract, containing the agreement that the sum of $5,350 was then owing. The discrepancy between this amount and the amount of the lien was explained by the defendant's witnesses, to the satisfaction of the trial court, as follows:

The proposed modification contemplated that the full value of the services rendered to the date of the modifica-

tion would not be treated as due and owing at that time, but a part thereof would be allowed to accrue as the work was completed and the lots were sold. Since the plaintiff was unwilling to proceed under this proposed modification and asked for a statement of the amount due if the contract were to be terminated, the defendant submitted its statement accordingly. The amount of the lien was based upon the assumption that the contract was terminated.

Witnesses for the defendant gave extensive evidence of the work that had been done and the time expended, and of the difficulty of computing the exact amount due which arose from the plaintiff's methods of keeping account of the grading work. We cannot say that the fact that the defendant had proposed an agreement regarding the amount due as of a certain date if the work was to continue raises an irrebuttable inference that the sum stated was the full amount due, or that the inference to be derived from this proposal was not overcome by the defendant's evidence that the amount claimed was the reasonable and agreed value of the services rendered to that date.

Nor can we find in the contract of April 24, 1953, an expression of an intent on the part of the defendant to waive its statutory lien. The mere fact that payment was not to be made until the lots were sold does not give rise to such an inference. The statute contemplates that, often where a lien is claimed, credit has been extended, and an express provision is made for the extension of time for foreclosure where payment is not due until more than eight months after the filing of the lien. RCW 60.04.100.

The lien for services is a valuable right, and its waiver is not to be presumed. The burden of showing a waiver of such a lien, by clear, certain, and unequivocal evidence, is upon the party asserting it. *Pacific Lbr. & Tbr. Co. v. Dailey*, 60 Wash. 566, 111 Pac. 869. Here, that burden has not been sustained.

The evidence showed that, although a small amount of office work was done on the account in January and February of 1954, work in the field had ceased on

December 22, 1953. The plaintiff had made no payments on the contract and had indicated that he might be forced to abandon the project, and the defendant was advised by its attorneys that the time for filing its lien for engineering services was rapidly expiring. With reasonable justification, the lien was filed. The trial court found, on substantial evidence, that the amount was proper. Having failed to establish that the lien was excessive or was filed without justification, the plaintiff cannot successfully maintain that the compromise was unlawfully coerced.

Concluding, as we do, that there is no basis on which the compromise should be set aside, we find it unnecessary to decide whether the plaintiff, by accepting the benefits of the agreement and delaying his challenge until the defendant's lien remedy was lost, can be heard to question its validity.

The judgment is affirmed.

HILL, C. J., DONWORTH, FOSTER, and HUNTER, JJ., concur.