[Nos. 37492, 37493.   En Banc.   November 4, 1965.]

BOISE CASCADE CORPORATION, *Appellant*, v. DISTINCTIVE HOMES, INC., *et al., Respondents.**

*Gess & Hurson,* for appellant.

*George C. Butler* and *Butler & Yencopal,* for respondents Clarke.

*Chas. H. W. Talbot,* for respondents Sheppard.

HILL, J.—The sole issue on this appeal is whether the plaintiff-appellant, Boise Cascade Corporation, d/b/a Best-way Building Center, hereinafter called Boise, waived its lien rights on two newly constructed residence properties

*Reported in 407 P.2d 452.

on each of which it was seeking to foreclose its lien for materials furnished. The houses were built on lots owned by B. M. Denson, the construction being by Distinctive Homes, Inc., a Denson corporation, and they will be referred to herein as the Clarke house and the Sheppard house.[1]

The trial court found that the liens had been waived, and entered judgment canceling the claimed materialmen's lien of the plaintiff-appellant on each of the properties.

B. M. Denson and Claude J. Denson, his son, testified that in consideration of B. M. Denson signing two promissory notes, one for $3,000 and one for $2,019.19,[2] thus assuming a personal liability to that extent for money which Distinctive Homes, Inc., owed Boise for materials theretofore furnished, the agents of Boise agreed to waive the liens on the newly constructed Clarke and Sheppard houses.

There was testimony from Boise's agents that it had insisted on the Denson notes as additional security and had agreed to withhold filing its liens, if certain payments were made before the time elapsed beyond which the lien rights would be lost for lack of filing. It was Boise's position that these payments were not made and, hence, it did not violate its agreement when, on May 22, 1962, it filed the liens on the Clarke and Sheppard houses which it now seeks to foreclose.

A lien right is a valuable right and its waiver is not to be presumed, and any waiver must be established by evidence that is "clear, certain and unequivocal." *Emrich v. Gardner & Hitchings, Inc.*, 51 Wn.2d 528, 320 P.2d 288 (1958); *Pacific Lumber & Timber Co. v. Dailey*, 60 Wash. 566, 111 Pac. 869 (1910).

The testimony of the Densons is, in itself, substantial evidence. That the trial court believed their testimony is indubitably clear; and the trial court made it equally clear

[1]One had been sold to William J. Clarke and wife; the other to John C. Sheppard and wife.

[2]This note was not in payment of anything due on the Clarke or Sheppard houses, but was in the exact amount due Boise on another Denson-built house on which the lien rights had expired.

that it disbelieved the witnesses who testified that Boise did not waive its lien rights, but merely agreed to extend the time for filing the liens to give the debtors some additional time in which to make payments.

The respondents invoke the *Hesperian* rule: that there being substantial evidence to sustain the findings of the trial court, we will accept those findings as verities. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

■ Were this merely a question of whether the Densons or the agents of Boise were to be believed on the issue of whether or not Boise waived its lien rights, we would have contented ourselves with our customary obeisance to *Hesperian.* There are, however, at least two factors, a written document and a statute, which require that we go beyond a consideration of who and what the trial court believed, and who and what the trial court disbelieved in a determination of whether the evidence of waiver was "clear, certain and unequivocal."

The written document, dated April 24, 1962 (exhibit No. 4), was a unilateral statement of Boise's credit manager as to what had been agreed upon at the conference between the Densons and Boise's agents on April 19th or 20th, and a copy of it was delivered to the Densons April 25th or shortly thereafter; neither of whom made any protest as to its accuracy. This memorandum made no reference to any waiver of liens, but specifically said that Boise would protect its account by perfecting and filing liens. It differed materially from the Densons' version of the conference, by stating that Boise's claim of $5,385.70 against the Clarke house was to be paid by $2,383.70 from the proceeds of the sale of the Clarke house,[3] and B. M. Denson's note for $3,000; and that Boise's claim of $5,151.26 against the Sheppard house was to be paid from the proceeds of the sale of a third house (identified as R-26).[4]

---

[3]Actually nothing was ever received by Boise from the sale of the Clarke House.

[4]This house was sold at that time, but the proceeds were not yet available. Exhibit No. 4 indicated that they were expected within

But even more important than exhibit No. 4 is public policy expressed in a state statute (RCW 60.04.140), which indicates that a claim that a lien has been waived by the taking of a promissory note must rest on something more tangible than the assertion that such lien was waived by the acceptance of a note or notes.

Doubtless, experience with the frequent claim of the waiver of lien rights by the acceptance of promissory notes led to this state enacting a statute in 1893 which presently reads: [5]

> The taking of a promissory note or other evidence of indebtedness for any labor performed, material furnished, or equipment supplied for which lien is created by law, shall not discharge the lien therefor, unless expressly received as payment and so specified therein. RCW 60.04.140.

Concededly, the $2,019.19 note, given by B. M. Denson, was additional security to cover the amount due for materials on a house on which the lien rights were already lost; but it, together with the $3,000 note of B. M. Denson, [6] are claimed by the Densons to have been given for the waiver of the lien rights by Boise on the Clarke and Sheppard houses, although neither of the notes meets the statutory requirement that the waiver of the lien be specified therein.

It was not specified in either note that it was received in payment of the indebtedness for materials, or that the

two weeks from April 20, 1962. There were delays in closing and it was in July, 1962, before the money was received. It was supposed to net between four and five thousand dollars; it actually netted $4,140.81, and this amount was paid to Boise, but not until August 17, 1962, after the liens had been filed. It was allocated by the Densons— $2,389.08 to the Clarke house and $1,751.73 to the Sheppard house.

[5] As enacted (Laws of 1893, ch. 24, § 14), it did not include the words "equipment supplied."

[6] It should perhaps be reiterated here that B. M. Denson and his wife were the owners of the lots on which the Clarke and Sheppard houses were built and that title passed from them directly to Clarke and to Sheppard by statutory warranty deeds.

This makes it quite clear that it was the Densons' property on which the material had been used and which was subject to Boise's lien rights.

lien rights were waived. Instead, each note specifically provided that,

> neither the giving nor the acceptance of this note with or without security shall be held to waive the payee's right to enforce any lien for materials or other lien to which otherwise it is entitled.

For cases construing such statutes, see *Llewellyn Iron Works v. Littlefield,* 74 Wash. 86, 132 Pac. 867 (1913); *River Rouge Sav. Bank v. S & M Bldg. Co.,* 359 Mich. 189, 101 N.W. 260, 91 A.L.R.2d 409 (1960).

The contention is made that this statute (RCW 60.04.140) does not apply where there has been a novation, and that a new party (B. M. Denson) had assumed the debt of Distinctive Homes, Inc., to Boise for materials furnished. Our case of *Union High School Dist. v. Pacific Northwest Const. Co.,* 148 Wash. 594, 269 Pac. 809 (1928), is cited in support of this proposition.

The quick answer is that there was no novation here. We have defined novation as

> "a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by the substitution of a new creditor."[7] *MacPherson v. Franco,* 34 Wn.2d 179, 182, 208 P.2d 641 (1949).

There was no evidence of an agreement whereby B. M. Denson agreed to pay Boise the debts of Distinctive Homes, Inc., and no evidence of a discharge of Distinctive Homes, Inc., from its original obligations. There being no novation, the statute (RCW 60.04.140) is applicable and should be given effect.

Consequently, we conclude that it has not been established that the B. M. Denson notes were given to Boise as a consideration for a waiver of its lien rights on the Clarke and Sheppard houses. So much of the trial court's judgment as canceled the lien rights of Boise is set aside;

---

[7] Quoted from 39 Am. Jur. 255, Novation, § 2.

and it is ordered that the liens on the Clarke and Sheppard houses be foreclosed. The Clarkes and Sheppards are entitled to again urge their claims against B. M. Denson and his wife on the basis of the warranties contained in their respective deeds from the Densons.

Remanded, with directions to permit foreclosure of liens on the Clarke and Sheppard houses for the amounts due the plaintiff for the material furnished for their construction.

DONWORTH, FINLEY, WEAVER, OTT, HAMILTON, and HALE, JJ., concur.

ROSELLINI, C. J. (dissenting)—The majority concede that the evidence was conflicting on the question of whether the appellant waived its lien rights and that it was within the province of the trial court to determine this factual question. Nevertheless, they review the evidence and make a finding contrary to that of the trial court.

The trial court found that the liens had been waived. The testimony of two witnesses supported this finding. B. M. Denson and Claude J. Denson, his son, testified that in consideration of B. M. Denson's signing two promissory notes, one for $3,000 and one for $2,019.19, thus assuming a personal liability to that extent for money which Distinctive Homes, Inc., owed Boise for materials theretofore furnished, the agents of Boise agreed to waive the liens on the two newly constructed residential properties referred to throughout the record as the Clarke house and the Sheppard house.

There was testimony from Boise's agents that it had insisted on the Denson notes as additional security and had agreed to withhold filing its liens, if certain payments were made before the time elapsed beyond which the lien rights would be lost for lack of filing. It was Boise's position that these payments were not made and, hence, it did not violate its agreement when it filed the liens on the Clarke and Sheppard houses and now seeks to foreclose.

The trial court was aware of the rule that a lien right is a valuable right and its waiver is not to be presumed,

and that any waiver must be established by evidence that is "clear, certain and unequivocal." *Emrich v. Gardner & Hitchings, Inc.,* 51 Wn.2d 528, 320 P.2d 288 (1958); *Pacific Lumber & Timber Co. v. Dailey,* 60 Wash. 566, 111 Pac. 869 (1910).

The fact that there is conflicting testimony from different witnesses does not make the evidence unclear, uncertain or equivocal.

The testimony of the Densons is, in itself, clear, certain and unequivocal and, if believed, meets the standard we have applied in such cases. That the trial court believed their testimony is indubitably clear; and the trial court made it equally clear that it disbelieved the witnesses who testified that Boise did not waive its lien rights, but merely agreed to extend the time for filing the liens to give the debtors some additional time in which to make payments.

There being substantial evidence to sustain the findings of the trial court, we should, under our repeated holdings, accept those findings as verities. *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn.2d 570, 343 P.2d 183. Boise having agreed to waive its liens and having received a sufficient consideration for its promise so to do (the two promissory notes of B. M. Denson), the judgments canceling its liens on the Clarke and Sheppard properties should be affirmed.

HUNTER, J., concurs with ROSELLINI, C. J.