IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GENSCO, INC., a Washington corporation, | ) ) ) | No. 75478-5-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | |
| JASON JOHNSON and TRICIA JOHNSON, husband and wife and their marital community, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| PRECISE CONSTRUCTION GROUP, LLC, a Wyoming limited liability company, | ) ) ) ) | |
| Defendant. | ) ) | FILED: August 21, 2017 |

SCHINDLER, J. — Don Rock and Jason Johnson owned Precise Construction Group LLC (Precise), a heating, ventilation, and air-conditioning (HVAC) contractor in Spokane and the Tri-Cities. In 2011, Rock and Johnson entered into a credit account agreement with HVAC supplier Gensco Incorporated. Johnson signed a continuing personal guaranty. The personal guaranty "covers all existing and future indebtedness" of Precise and "unconditionally guarantees . . . every indebtedness or obligation . . . of any kind whatsoever." Johnson rescinded the personal guaranty in 2014. In 2015, Gensco filed a lawsuit against Johnson to collect the amount Precise owed before

rescission of his personal guaranty. The court granted summary judgment for Precise. Johnson appeals the summary judgment order and entry of the judgment for $32,285.42 plus interest of $3,497.14 and attorney fees and costs. We affirm.

## FACTS

The facts are undisputed. Don Rock and Jason Johnson owned Precise Construction Group LLC (Precise). Precise is a heating, ventilation, and air-conditioning (HVAC) contractor. Gensco Incorporated is located in Tacoma. Gensco manufactures and distributes HVAC products.

On October 18, 2011, Rock and Johnson applied for a credit account with Gensco. The application identified the address of Precise as 509 North Sullivan Road, Spokane, Washington. The application states Precise is a licensed HVAC, electrical, and general contractor. The application states Rock and Johnson have owned Precise for nine years. The application identifies Rock as the manager and "Purchasing Contact" and Johnson as the chief executive officer and "Accounts Payable Contact." The application identifies the "Desired Credit Limit" as $10,000.

The "Terms and Conditions" of the credit account agreement state the "Applicant affirms that all Information made in this application is true and correct" and the "Applicant hereby agrees that all purchases are subject to the following terms and conditions as well as the terms and conditions on the Invoices." The agreement states Gensco issues monthly statements for purchases made on credit and the "balance due for each account is payable by the 25th of the following month." The agreement also states Gensco "may apply payments at its own discretion unless instructions or remittance information as to how funds are to be applied is provided."

On October 18, Johnson also signed a "Continuing Personal Guaranty." The

guaranty identifies Precise as the "Applicant" and Johnson as the "Guarantor (Individual)." The Continuing Personal Guaranty states that in consideration for extending credit to Precise, Johnson "unconditionally guarantees . . . all existing and future indebtedness" for "every indebtedness or obligation" of Precise to Gensco.

> In consideration of GENSCO, INC extending credit to the APPLICANT, the Guarantor(s) agree as follows.
>
> A.  OBLIGATION.  THE GUARANTOR(S) UNCONDITIONALLY GUARANTEES PROMPT PAYMENT WHEN DUE OR UPON DEMAND THEREAFTER OF EVERY INDEBTEDNESS OR OBLIGATION THE APPLICANT HAS TO GENSCO, INC OF ANY KIND WHATSOEVER.  This guaranty covers all existing and future indebtedness of the APPLICANT to GENSCO, INC.

The guaranty states it is "a continuing guaranty and shall be revocable only upon GENSCO, INC's receipt of written notice of revocation," and a revocation "shall only be effective with respect to extensions of credit by GENSCO, INC to the APPLICANT, which arise after receipt of the notice of revocation."

> B.  TERM OF GUARANTY.  This is a continuing guaranty and shall be revocable only upon GENSCO, INC's receipt of written notice of revocation from Guarantor(s).  Notice of revocation from the Guarantor(s) must be given by registered or certified mail to the GENSCO, INC address shown on this guaranty.  The Guarantor(s)'s revocation shall only be effective with respect to extensions of credit by GENSCO, INC to the APPLICANT, which arise after receipt of the notice of revocation.  The revocation shall not be effective if there are any unpaid debts of the APPLICANT to GENSCO, INC at the time the notice of revocation is received.

Gensco Regional Credit Manager Sherry Roseboom sent a letter to Johnson on October 18, 2011 establishing "an initial credit limit of $5,000 for your company." The letter identifies the account number as "Account #44301."

By August 2012, approximately 10 months after opening the account, Gensco had increased the credit limit to $100,000 and in September 2012, Gensco increased

Precise's credit limit to $150,000.

On March 4, 2014, Rock and Johnson sent an e-mail to Roseboom to rescind the personal guaranty. The e-mail states, in pertinent part:

> Precise Construction Group L.L.C. requests that Jason Johnson and Don Rock be removed from personal guarantors on the Gensco Account. We have discussed this several times and have agreed that the size of Precise Construction Group L.L.C. has outgrown any one individual or individuals [sic] financial means.

> We would like to work with Gensco as the coming season approaches at a full capacity.

On March 4, 2014, Precise owed Gensco $56,956.61.

On March 14, Gensco sent a letter acknowledging rescission of the personal guaranty of Johnson. The letter states Rock never signed a personal guaranty. The letter confirms that as of March 4, 2014, Johnson would no longer be liable for purchases made by Precise.

> Gensco recognizes that Jason Johnson has requested to have his Personal Guaranty removed from the account of Precise Construction Group as of March 4, 2014. Gensco recognizes that Jason will not be personally liable for purchases on the Precise Construction account with Gensco after that date. Don Rock had never signed a Personal Guaranty and therefore it is not necessary for removal of that name.

Between March 5 and May 22, 2014, Precise "made additional purchases on credit of about $78,000.[00]." Precise made payments of $22,671.19 from March 5 until June 27, 2014. Because Gensco applied the payments to the oldest outstanding invoices, the amount owed for purchases made before Johnson rescinded the personal guaranty was reduced to $34,285.42.

By late June, Gensco no longer allowed Precise to use credit and required payment of "cash on delivery." By August, Precise owed Gensco $118,100.25. On September 2, Precise signed an "Installment Note" and security agreement. Precise

4

promised to pay Gensco the past-due principal of $118,100.25 in monthly payments of $2,000.00 with interest computed at six percent per annum. The Installment Note states, in pertinent part:

> **1.     For Value Received,** Precise Construction Group, LLC DBA Access Electric & Heating promises to pay to the order of GENSCO INC, the sum of ONE HUNDRED EIGHTEEN THOUSAND, ONE HUNDRED DOLLARS AND 25/100 CENTS ($118,100.25) together with interest thereon at the rate of Six percent (6%) per annum from September 25, 2014 until paid.
>
> **2.     Payment.** This note is payable at any office of GENSCO INC in monthly installments of principal and interest of $2,000.00 per month commencing on September 25th, 2014 and on or before the 25th of each month thereafter until the whole sum, principal and interest has been paid.

The security agreement gives Gensco a security interest in vehicles owned by Precise. The agreement states that in the event of default, under the Installment Note, Gensco is entitled to the remedies as a secured creditor.

On September 2, Precise made a $2,000.00 payment. Gensco applied the $2,000.00 payment to the oldest outstanding debt, reducing the amount Precise owed to $116,100.25 and liability under the personal guaranty to $32,285.42.

Between October 2014 and May 2015, Precise paid $10,300.00. Gensco allocated $6,003.60 to the debts Precise incurred after Johnson rescinded the Continuing Personal Guaranty and $4,877.75 to accrued interest. Precise made no payments after May 2015.

Gensco took possession of the vehicles subject to the security agreement. Gensco sold the vehicles for $6,392.20. Gensco applied the proceeds to the debts Precise incurred after Johnson rescinded the Continuing Personal Guaranty, reducing the amount Precise owed to $110,095.01.

On July 24, 2015, Gensco filed a breach of contract lawsuit against Precise and

5

Johnson. Gensco requested entry of a judgment against Precise for $110,095.01 plus $2,078.06 in accrued interest and attorney fees and costs. Gensco alleged Johnson was liable under the Continuing Personal Guaranty for outstanding amounts incurred before rescission of the personal guaranty on March 4, 2014. Gensco requested entry of a judgment against Johnson for $32,285.42 plus $609.39 in accrued interest and attorney fees and costs.

Johnson asserted as an affirmative defense that he was not liable for any debts Precise incurred after he rescinded the personal guaranty and Gensco did not "properly apply and disclose payments made on the account." Johnson also asserted the debt "was converted to an Installment Note on September 2, 2014" and that note "is solely between Precise" and Gensco. Johnson requested the court dismiss "all claims in the Plaintiff's Complaint."

On September 29, 2015, the court entered a judgment against Precise for $110,000 plus interest and attorney fees and costs.

Gensco filed a motion for summary judgment on the liability of Johnson under the personal guaranty. The court continued the motion to allow additional discovery. Following discovery, Gensco renewed the motion for summary judgment.

Gensco agreed Johnson "can only be liable for purchases made prior to the rescission" of the personal guaranty on March 4, 2014. Gensco argued that under the plain and unambiguous language of the Continuing Personal Guaranty, Johnson was liable for $32,285.42 for the debt incurred before the effective date of the rescission on March 4, 2014. Gensco submitted a number of documents, including the credit account application and agreement, the Continuing Personal Guaranty, the Installment Note, account statements sent to Precise, and the declaration of Gensco Senior Credit

6

Manager James Albert.

Albert provided a detailed accounting of purchases and payments made by Precise after Johnson rescinded his personal guaranty. Albert states Gensco exercised its discretion to apply payments received from Precise after September 2, 2014 to debts incurred after the rescission of the guaranty "in order to preserve [Gensco's] security/ guaranty for payment against JOHNSON in the principal amount of $32,285.42."

In opposition, Johnson argued the amount of the guaranty was limited to $10,000 because the "Desired Credit Limit" on the credit account application was $10,000 and he executed the personal guaranty at the same time. Johnson also argued there were "three additional accounts" and his personal guaranty only applied to debts incurred at the Spokane address and account number 44301. In the alternative, Johnson argued the September 2014 Installment Note between Gensco and Precise discharged his obligation under the personal guaranty and Gensco should have applied all payments received to the oldest outstanding invoices.

Johnson submitted a declaration, account statements and invoices sent to Precise at the Spokane address, and excerpts from the deposition of former Gensco credit manager Roseboom.[1] The statements and invoices show Precise made purchases at different locations with different account numbers: "SPOKANE," account number 44301; "KENNEWICK," account number 44349; "YAKIMA," account number 44350; and "RHEEM HOME DEPOT," account number 44303.

---

[1] Gensco argues we should disregard the declaration filed by Johnson and his spouse in opposition to summary judgment because the declarations do not state they were signed under penalty of perjury or the date and place of execution as required under RCW 9A.72.085. Because the record does not show that Gensco moved to strike the declarations in the trial court, Gensco has waived this argument. Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 666-67, 362 P.3d 1287 (2015); State Farm Fire & Cas. Co. v. Ford Motor Co., 186 Wn. App. 715, 726-27, 346 P.3d 771 (2015); Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 352, 588 P.2d 1346 (1979).

The court granted the motion for summary judgment. The court entered a judgment against Johnson for $32,285.42 plus prejudgment interest of $3,497.14 and attorney fees and costs. Johnson appeals.

ANALYSIS

We review an order of summary judgment de novo and engage in the same inquiry as the trial court. Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 709-10, 375 P.3d 596 (2016). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). We consider all facts and all reasonable factual inferences in the light most favorable to the nonmoving party. Young v. Key Pharms., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989). "[I]f reasonable minds could reach only one conclusion from the evidence presented," summary judgment should be granted. Estate of Becker v. Avco Corp., 187 Wn.2d 615, 621, 387 P.3d 1066 (2017); Allen v. State, 118 Wn.2d 753, 760, 826 P.2d 200 (1992).

Johnson argues the Continuing Personal Guaranty is limited to $10,000 because the credit account application identifies a "Desired Credit Limit" of $10,000. The plain and unambiguous language of the personal guaranty does not support his argument.

The interpretation and construction of a guaranty is governed by the same rules that apply to contracts. Frontier Bank v. Bingo Invs., LLC, 191 Wn. App. 43, 53, 361 P.3d 230 (2015); First-Citizens Bank & Trust Co. v. Cornerstone Homes & Dev., LLC, 178 Wn. App. 207, 212, 314 P.3d 420 (2013); Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 699, 952 P.2d 590 (1998). We interpret a contract de novo as a matter of law. Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d

733 (2005).

Our primary goal is to ascertain the parties' intent. <u>Berg v. Hudesman</u>, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). We determine intent by focusing on the objective manifestation of the parties in the written contract. <u>Hearst Commc'ns, Inc. v. Seattle Times Co.</u>, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "Accordingly, a court considers only what the parties wrote, giving words in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent." <u>4105 1st Ave. S. Invs., LLC v. Green Depot WA Pac. Coast, LLC</u>, 179 Wn. App. 777, 784, 321 P.3d 254 (2014); <u>Hearst</u>, 154 Wn.2d at 503-04. A contract " 'should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions.' " <u>Colo. Structures, Inc. v. Ins. Co. of the W.</u>, 161 Wn.2d 577, 588, 167 P.3d 1125 (2007)[2] (quoting <u>Colo. Structures, Inc. v. Ins. Co. of the W.</u>, 125 Wn. App. 907, 915-16, 106 P.3d 815 (2005)).

The plain and unambiguous language of the personal guaranty states that it "covers <u>all existing and future indebtedness</u>" of Precise and that Johnson "unconditionally guarantees prompt payment . . . of <u>every indebtedness or obligation</u> [Precise] has to Gensco, Inc of any kind whatsoever."[3] The Desired Credit Limit of $10,000 in the credit account application cannot "vary, contradict or modify" the unambiguous language of the personal guaranty. <u>Hollis v. Garwall, Inc.</u>, 137 Wn.2d 683, 695, 974 P.2d 836 (1999); <u>Wilkinson v. Chiwawa Cmtys. Ass'n</u>, 180 Wn.2d 241, 251, 327 P.3d 614 (2014); <u>Berg</u>, 115 Wn.2d at 670.

> "An absolute and unconditional guaranty should be and is enforceable according to its terms. The courts are to enforce it as the parties meant it

---

[2] Footnote omitted.
[3] Emphasis added.

9

to be enforced, with full effect given to its contents, and without reading into it terms and conditions on which it is completely silent."

Frontier Bank, 191 Wn. App. at 54 (quoting Nat'l Bank of Wash. v. Equity Inv'rs, 81 Wn.2d 886, 919, 506 P.2d 20 (1973)).

Johnson relies on Lynch v. Higley, 8 Wn. App. 903, 919, 510 P.2d 663 (1973), to argue that because the credit agreement and the personal guaranty were executed at the same time, "they should be considered together to ascertain the intent of the parties and the obligations actually and necessarily implied." But the court in Lynch states a "fully integrated agreement of a contractual nature may not be varied by extrinsic evidence, written or oral, so as to add to, subtract from, or contradict its provisions." Lynch, 8 Wn. App. at 908.

Johnson also argues the personal guaranty applied to debts that Precise incurred at only the Spokane address and under account number 44301. But the Continuing Personal Guaranty is not limited to a store location or account number. The unambiguous language of the personal guaranty states Johnson agreed to "unconditionally guarantee[ ] prompt payment . . . of every indebtedness or obligation [Precise] has to Gensco, Inc of any kind whatsoever."[4]

Further, the unrebutted testimony shows Gensco used account number 44301 as the "master account." Roseboom testified that account number 44301 was the "master account number" and the other account numbers "were sub-accounts of the main account . . . all tied together." Roseboom said that although Precise "may have different locations, . . . the credit limit that's given to them is the overall credit limit." Roseboom testified that by September 2012, Gensco had increased Precise's credit limit to

---

[4] Emphasis added.

$150,000 because "Precise was doing a lot of work in the Tri-Cities area. The bulk of their purchases were out of that area, and the purchases that they had required that kind of a credit limit."

We conclude the plain and unambiguous language of the Continuing Personal Guaranty applied to all of Precise's debts to Gensco and was not limited to $10,000 or debts incurred at only the Spokane location.

Johnson contends execution of the Installment Note between Precise and Gensco "discharged" his obligations under the Continuing Personal Guaranty. A guaranty is " 'a collateral engagement for the performance of an undertaking of another' " and " 'imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor.' " Wilson Court, 134 Wn.2d at 707 (quoting Robey v. Walton Lumber Co., 17 Wn. 2d 242, 255, 135 P.2d 95 (1943)). " 'A written guarantee of payment of the principal's indebtedness . . . [is] governed by its own terms.' " Union Bank NA v. Blanchard, 194 Wn. App. 340, 352, 378 P.3d 191 (2016)[5] (quoting Frontier Bank, 191 Wn. App. at 53). The guaranty is an independent obligation. Frontier Bank, 191 Wn. App. at 53; Wilson Court, 134 Wn.2d at 707.

Johnson asserts the Installment Note was "specifically drafted to exclude any personal guarantee." Contrary to Johnson's assertion, the language of the Installment Note does not address the obligation under the Continuing Personal Guaranty. The personal guaranty unambiguously states Gensco's acceptance of "any notes or other consideration for payment of the indebtedness . . . will not in any way relieve" Johnson

---

[5] Alterations in original.

of his obligations under the personal guaranty.[6]

Under the terms of the Continuing Personal Guaranty, Johnson is liable for the debt incurred by Precise before rescission of the guaranty on March 4, 2014. The personal guaranty states, in pertinent part:

> CONDITIONS. . . . If GENSCO, INC, for any reason, should elect to extend the APPLICANT additional time to pay it's [sic] obligations . . . or accept on account any notes or other consideration for payment of the indebtedness; such concessions extended by GENSCO, INC will not in any way relieve the Guarantor(s) from its obligations under this Guaranty.

Execution of the Installment Note between Precise and Gensco did not discharge the Continuing Personal Guaranty and the obligation of Johnson. See Seattle First Nat'l Bank, 41 Wn. App. at 608 (guarantor's obligation not discharged by creditor's acceptance of note where guarantor agreed to " 'remain bound notwithstanding any extensions or renewals of any indebtedness' ").

In the alternative, Johnson argues Gensco established a course of dealing that "modified" the language of the credit agreement giving Gensco discretion as to how to apply payments by previously applying payments to the oldest outstanding invoices. Johnson asserts payments received after execution of the Installment Note and the proceeds from the sale of vehicles should apply to the oldest outstanding invoices and reduce the amount subject to his personal guaranty.

Where parties have entered into an agreement that addresses the application of payments, the payments "must be applied in accordance with the terms of the agreement." Warren v. Wash. Trust Bank, 92 Wn.2d 381, 385, 598 P.2d 701 (1979).

---

[6] Johnson uses the term "novation" to argue execution of the Installment Note discharged his obligation under the Continuing Personal Guaranty. Although the Installment Note constitutes an agreement between Gensco and Precise to substitute a new agreement, that agreement is unrelated to Johnson's obligation under the personal guaranty. Boise Cascade Corp. v. Distinctive Homes, Inc., 67 Wn.2d 289, 293, 407 P.2d 452 (1965).

But here, the unambiguous language of the credit agreement states Gensco "may apply payments at its own discretion unless instructions or remittance information as to how funds are to be applied is provided." Further, it is well established that "unless the creditor has specific instructions from the debtor as to how payments are to be applied, the creditor may apply payments to any part of the debt, as he sees fit." Oakes Logging, Inc. v. Green Crow, Inc., 66 Wn. App. 598, 601, 832 P.2d 894 (1992); LRS Elec. Controls, Inc. v. Hamre Constr., Inc., 153 Wn.2d 731, 743, 107 P.3d 721 (2005) (" '[W]hen a debtor fails to direct how a payment is to be applied the creditor may make the application as he may see fit.' ")[7] (quoting U.S. Fid. & Guar. Co. v. E.I. Dupont De Nemours & Co., 197 Wash. 569, 579, 85 P.2d 1085 (1939))); Warren, 92 Wn.2d at 384; Armour & Co. v. Becker, 167 Wash. 245, 248-49, 9 P.2d 63 (1932) (where amount owed by principal exceeded amount of the guarantor's guaranty, creditor "had the legal right" to apply payments "as desired" to reduce the principal's debt not subject to guaranty). There is no evidence that Precise instructed Gensco how to apply the payments or the proceeds from the sale of the vehicles.

Johnson cites RCW 62A.2-202. RCW 62A.2-202(a) does not support his argument. RCW 62A.2-202(a) states that "course of performance, course of dealing, or usage of trade" may be used to "explain[ ] or supplement[ ]" the parties' written agreement.[8] Because extrinsic evidence cannot "vary, contradict or modify" the plain

---

[7] Internal quotation marks omitted.

[8] RCW 62A.2-202 states, in pertinent part:
Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
    (a) By course of performance, course of dealing, or usage of trade.

and unambiguous terms of a written agreement, RCW 62A.2-202 does not apply. Hollis, 137 Wn.2d at 695; Wilkinson, 180 Wn.2d at 251. Under the plain and unambiguous terms of the agreement, Gensco had the discretion to apply payments and proceeds from the sale of the vehicles to debts incurred after rescission of the Continuing Personal Guaranty.

Gensco requests attorney fees and costs on appeal. The Continuing Personal Guaranty provides for reasonable attorney fees and costs. The Continuing Personal Guaranty states, in pertinent part, "This guaranty covers . . . reasonable attorney fees and costs incurred by GENSCO, INC in the course of collecting obligations of the APPLICANT which are not paid when due." Upon compliance with RAP 18.1, Gensco is entitled to an award of reasonable attorney fees and costs on appeal.

We affirm the order on summary judgment and entry of the judgment.

Leivelle, J.

WE CONCUR:

Mann, J.

Spearman, J.